David O. Boehm, J.
On June 21, 1968, Charles F. Crimi, an attorney at law, now maintaining offices at 700 Wilder Building in the City of Rochester, Monroe County, New York, was assigned by order of this court to represent the above-named defendant, an indigent, who had been indicted by the Grand Jury of the County of Monroe, (Indictment No. 284 filed June 14, 1968), charged with the crime of murder in violation of subdivision 1 of section 125.25 of the Penal Law of the State of New York.
This matter is now before the court with respect to an application by Charles F. Crimi, Esq., to be allowed counsel fees and defense expenses pursuant to section 722-b and section 722-c of the County Law beyond the limits provided therein.
*145 Section 722-b provides that compensation to assigned counsel be at the rate of not more than $15 per hour for time expended in court and $10 for time reasonably expended out of court. In addition, such assigned counsel shall receive reimbursement for expenses reasonably incurred. It further limits a total compensation to such assigned counsel where defendant is charged with a felony, of $500. Section 722-b provides; “In extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.”
Section 722-c authorizes assigned counsel to obtain investigative, expert or other services on behalf of a defendant, as well as authorizing such services mmc pro tunc. It limits such compensation to $300 except in extraordinary circumstances.-
The application for counsel fees and defense expenses is fully supported by a detailed and itemized accounting of the time expended both in court and out of court and by a recital of the defense expenses previously authorized by court order, as well as those for which approval nunc pro tunc is now requested. As to the latter, copies of the court orders authorizing counsel to retain Dr. William Libertson as defense psychiatrist, are attached to the assigned counsel’s voucher, together with Dr. Libertson’s bill for $900. In addition, there are attached, bills for minutes of a preliminary hearing in the amount of $45 and a photocopy of a check payable to the Monroe County Sheriff’s office for $12.40 for serving subpoenas. With respect to counsel’s own services, both in court and out of court, his voucher which verifies in itemized form the total time from June 21, 1968 when the matter was originally assigned to him, up until May 6, 1969 when the indictment was ultimately dismissed, shows that he spent 26 hours, 25 minutes in court and 45 hours, 35 minutes out of court. A reading of counsel’s affidavit discloses a marked and extraordinary application to his client’s cause during that period of time. On the basis of his preparation, research and investigation, he initiated an examination for the purpose of determining the defendant’s mental capability in knowingly and intelligently waiving his so-called Miranda rights (Miranda v. Arizona, 384 U. S. 436), when a statement was taken from him while he was in police custody. The Monroe County Health Clinic did not directly respond to this question, but instead found the defendant to be a mental defective requiring commitment to Napanoch in that he was incapable of standing trial. A hearing to controvert these findings was initiated by defendant’s counsel. The court is particularly struck by the concern of counsel for his client’s welfare in that an automatic commitment of the defendant to Napanoch as an *146 apparent congenital mental defective, with, little prospect for recovery and without a prior determination regarding his guilt or innocence, would in all probability have resulted in the lifetime confinement of defendant when the only evidence of guilt was, admittedly, his confession.
However, counsel’s “ concern for his client ” is not the basis for the decision here made regarding the awarding of additional compensation to him. It is presumed that all members of the Bar share a similar concern for their clients’ interests with respect to any matter for which they have been retained. Rather, it is the degree of skill and knowledge demonstrated by him, his assiduous effort, unremitting zeal, time and attention unstintingly given by counsel, a single practitioner, and the results accomplished, which merit, in the court’s opinion, compensation in excess of the ordinary limits.
The court does not find that more time was expended than the circumstances of the case warranted, nor that the time expended was required because counsel was a novice in the field of criminal law, nor that the litigation was unnecessarily protracted, nor research duplicative, nor that the time expended was excessive for the results accomplished.
The court is mindful of the guidelines proposed by then presiding Justice Botein of the First Department and presiding Justice Beldock of the Second Department in their very learned and informative opinion in People v. Perry (27 A D 2d 154) wherein excess compensation was disallowed. It appears that they relied very heavily upon 11 Federal District Court decisions, none decided later than 1966, under the Federal Criminal Justice Act of 1964. It appears that the requirements for court allowance of additional compensation are far more legislatively limited (p. 158), by the Criminal Justice Act than the requirements set forth in section 722-b of the County Law where the court is given far wider discretion.
Secondly, if the rule is to be that the 1 ‘ amount of time reasonably and necessarily spent should be the sole criterion in determining whether ‘ extraordinary circumstances ’ have been demohstrated ” (p. 161), then that requirement has been met here and the court finds that the time spent by counsel in the case at bar was “ reasonably” and “ necessarily” .spent.
If another criterion is to be that in addition a finding of ‘ ‘ extraordinary circumstances ’ ’ can be made ‘1 only if the court concludes from the facts that a denial of additional compensation would be grossly unjust ” (p. 161), a test that is taken from the Criminal Justice Act and not found in section 722-b, the court makes that finding here, particularly because of the very *147 strong possibility that, but for the experience, expertise and effective advocacy of counsel here, the defendant would in all probability have been incarcerated, before trial, as a mental defective, or, after trial, if the confession had not been suppressed.
Thus it is also plain that the decision regarding compensation is not based entirely upon the type of crime involved nor its seriousness.
Although both applications for an additional allowance were rejected in People v. Perry (supra), it appears that the same was based upon the particular facts rather than a broad and unselective judicial reluctance to allow extra compensation even when the facts warranted it.
In one case, the detailed information regarding the services rendered and the necessity for the time spent was lacking. There was also included in a 34-hour period attributed to the trial, a period of 7 hours during which the jury deliberated. The other six hours claimed to be court time were asserted as having been expended in obtaining 6 continuances. There were other unexplained and unsubstantiated hours.
In the other application there was a claim, among other things, of 78 hours in preparation of which 15 hours were for regular research, 22 for interviews with witnesses and consultation with prosecuting officials, and 38 reviewing the record of a prior trial of defendant which had resulted in a mistrial.
If the Federal standard is the one to be applied in awarding additional compensation under the County Law, the court is of the opinion that the standard has been met, particularly in view of the holding in United States v. Ursini (296 F. Supp. 1155). The most important factor, the District Court held, in determining whether extra payment is necessary, is the fact that the attorney not only did not waste time, but conserved time. The court referred to United States v. Pope (251 F. Supp. 234) where two court-appointed attorneys were allowed a total of more than $10,000 and the Chief Judge of the United States Court of Appeals for the Eighth Circuit approved the amount.
Unquestionably, counsel here, by his experience at the criminal bar and his ability, moved with singleness of purpose towards the result ultimately accomplished and his affidavit indicates that this was done with a lean and purposeful expenditure of time.
In the case of People v. Manning (27 A D 2d 841) decided approximately one month after People v. Perry (supra), where an application was filed for additional compensation under the then County Law, the Second Department rejected the same as *148 being so grossly excessive as to warrant eliminating the claimant’s name from the panel of appellant attorneys. Here, again, it appears the application was denied on the basis of the particular facts rather than a general judicial attitude towards all claims for extra compensation.
The court is not aware of any decisions involving .section 722-b in the Fourth Department, nor, for that matter, in the Third Department, either. It may be that the broad guidelines established by the First and Second Departments in People v. Perry (supra), will be followed by the Fourth Department. On the other hand, geographical, population and practice differences in the concentrated and congested area covered by the First and Second Departments and the burdensome difficulty of properly administering the program may or may not have been of some influence in suggesting to the learned Justices that the narrow Federal rule should be followed.
The Fourth Department not yet having spoken on the subject, this court, although guided by the Perry strictures and adhering thereto, admittedly exercises here somewhat greater flexibility in applying them.
This court further finds that section 722-b gives the court discretion as to whether or not it may award more than the maximum hourly rate as well as the specified maximum. It states: “ In extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.” The limits referred to are the hourly rates of $15 per in-court time and $10 per out-of-court time, with a maximum compensation of $500 in a felony matter. It would seem, therefore, that the court’s discretion would be applicable to all of the limits mentioned in the section, hourly as well as total. Otherwise, the Legislature could, and no doubt would, have clearly and simply added language that in no event could the hourly rates exceed the foregoing limits or, in the alternative, that in no event could both the hourly rates and the total maximum be increased at the same time for the same matter. Nor did the Legislature mandate, as did Congress in the Federal Criminal Justice Act of 1964 (U. S. Code, tit. 18, § 3006A), that payment in excess of the statutory limits requires not only “ extraordinary circumstances ’ ’ but ‘ ‘ protracted litigation ’ ’ as well.
Further, such judicial discretion would seem to inhere, even in the absence of statutory authority, in the power of the court to order compensation to attorneys appointed by it to defend indigents.
Although People v. Perry (supra, p. 158), indicated there “ that the prevailing view of State courts is that, in the absence *149 of statutory provisions, assigned counsel are not entitled to any monetary compensation whatever ” (citing United States v. Dillon, 34 F. 2d 633 [9th Cir., 1965]; State v. Superior Ct., 2 Ariz. App. 466 [1966]), there is considerable authority to the contrary. (People ex rel. Conn v. Randolph, 35 Ill. 2d 24; State v. Rush, 46 N. J. 399; Knox County Council v. State ex rel. McCormick, 217 Ind. 493; Abodeely v. County of Worcester, 352 Mass. 719; Stahl v. Board of County Comrs., 198 Kan. 623; State v. Curtis, 4 Cr L 2446 [Mo. Cir. Ct., St. Louis City, Feb. 17, 1969]; Matter of Antini, 5 Cr L 2069 [N. J. Sup. Ct., March 17, 1969].)
In this connection, it is noteworthy that the Court of Appeals held directly in People v. Price (262 N. Y. 410) that there is inherent power in the courts to assign counsel to defend a prisoner who is without an attorney and unable to employ one. Earlier, the Appellate Division in People ex rel. Acritelli v. Grout (87 App. Div. 193, affd. 177 N. Y. 587) held that the right to assign counsel was coexistent with colonial and constitutional government in this State and found a place in section 6 of article I of the State Constitution. It pointed out that there was never a time in the governmental history of the State when the court lacked the power to assign counsel for the defense of indigent persons charged with crime, and accordingly, upheld the constitutionality of the then provision of the Code of Criminal Procedure authorizing compensation to counsel as a legitimate county expense. (Code Crim. Pro., § 308; see, also, People v. Heiselbetz, 30 App. Div. 199.)
Another early case held that section 308 of the Code of Criminal Procedure did no more than declare the unwritten law in force when the code was adopted and integrated it with the great body of the common law, and was confirmed by the uniform practice of all our criminal courts of record, both colonial and State. (People ex rel. Brown v. Board of Supervisors, 4 N. Y. Crim. Rep. 102, affd. 102 N. Y. 691.)
Accordingly, this court finds that the in-court hours itemized in the voucher of assigned counsel were reasonable, necessary and required in order to properly defend the client assigned to him; that he is entitled to compensation in excess of the ordinary limits, pursuant to section 722-b of the County Law; that such compensation is awarded at the rate of $20 per hour for in-court time and $15 per hour for out-of-court time; that the said counsel necessarily spent 26 hours, 25 minutes in court, but that the 25 minutes are to be deducted therefrom, and that the total compensation for in-court time shall be $520; that counsel necessarily spent 45 hours, 35 minutes out-of-court time, but *150 that 35 minutes are to be deducted therefrom, and that the total compensation for out-of-court time shall be $675; that the services of Dr. William Libertson previously authorized by qrder of the court, and his bill in the sum of $900 for services rendered pursuant thereto, are approved as reasonable and necessary; and the expenses incurred without prior approval in the sum of $45 for the minutes of the preliminary hearing, and the amount of $12.40 for the service of the subpoenas, plus mileage, are hereby found to be necessary and reasonable and are authorized and approved mmc pro tunc.
The sum of $1,195, the total of in-court and out-of-court compensation awarded to counsel shall be paid to Charles F. Crimi, Esq., by the County of Monroe; the sum of $12.40 representing moneys advanced by said Charles F. Crimi, Esq., for the services aforesaid shall be reimbursed to him by the County of Monroe; the sum of $900 shall be paid by the County of Monroe directly to Dr. William Liberston; and the sum of $45 for the minutes of the preliminary hearing shall be paid to Louis V. Civiletti, Court Reporter, by the County of Monroe.
One passing comment might be in order with respect to the above amounts. The court, by awarding the foregoing to counsel in this matter in no way intends to, nor is it of the opinion that it will, compensate counsel at the usual rates which would generally and normally be charged by the Bar for such services with respect to a private client. It was never the intention of any assigned counsel program to fully compensate an attorney for such services.
Representing the indigent for small fees, and for many years, other than in capital cases, for no compensation at all except for reimbursement of necessary disbursements, has long been regarded as one of the traditional and selflessly assumed obligations of the Bar. It is a duty which the Bar has nobly and graciously, frequently courageously, carried out. One need only recall the example of Seward, later Secretary of State under Abraham Lincoln, defending a mad indigent Negro, gratuitously and at the risk of his political career. There are many other great examples, both earlier and later, from Hamilton to Adams to Donovan, as well as the many unsung members of the profession who have, through the years, represented the indigent long before Government arrived at this important and essential task.
This observation is made for the purpose of eliminating any possible belief that it is the intention of the court to fully compensate counsel for his services here. This is not the case and, in this connection, the court notes that according to the minimum fee schedule of the Monroe County Bar Association adopted *151 June 24,1965 and effective July 1, 1965, the hourly time charge for principals is $30. This hourly rate is computed for work preliminary to trial, as well as for office work. Counsel here is awarded one half of that sum. The per diem rate for trial, hearings or proceedings in County Court is $200. This appears to be an anomaly, for the per diem rates in Family Court and Surrogate’s Court, also of county-wide jurisdiction, (the Judges in some counties conducting all three courts), is $250. Assuming that trials or hearings in Monroe County Courts generally commence at 10:00 a.m., stop for a recess at 12:30 p.m., reconvene at 2:00 p.m. and run until 5:00 p.m., such would represent a total of 5% hours for in-court time or, at most, 6 hours. Based upon these figures, the hourly rate for in-court work would average out at $40. Counsel here is awarded compensation for in-court work at the rate of one half such figure.