OPINION OF THE COURT
Budd G. Goodman, J.
QUESTION PRESENTED
The question presented by this case is, in what manner and under what circumstances may a trial court award compensation in excess of the statutory hourly rates (so-called enhanced compensation) under the "extraordinary circumstances” provision of County Law § 722-b?
THE INSTANT MATTER
Defendant was charged with two murders, three attempted murders, multiple additional violent felony offenses and assorted weapons offenses under four separate indictments, as well as with a violation of probation on a prior case. These cases proceeded through customary motion practice. A combined Wade and Huntley hearing was held over a five-day period during which a number of police and civilian witnesses testified. The four indictments, prosecuted by several different Assistant District Attorneys, involved distinct fact patterns and generated substantial Rosario material. Additionally, counsel had to prepare defendant to testify at the pretrial hearings. By working with this young defendant and his family, defense counsel was gradually able to help them accept the *575 harsh reality of defendant’s legal predicament and to deal with it realistically. Having accomplished this, defense counsel was able to enter into meaningful plea negotiations on behalf of the defendant, as a result of which he pleaded guilty on June 23, 1995. On July 28, 1995, the defendant was sentenced, in accordance with the negotiated plea, to a prison term of 20 to 60 years.
Defense counsel submitted his 18-B voucher, which covered all of the above-referenced cases, in which he requested enhanced compensation of $75 per hour for both the in-court and out-of-court time he spent on these cases. On April 17, 1996, this court found that these cases presented extraordinary circumstances and awarded compensation of $75 per hour for in-court time but denied counsel’s request for enhanced compensation for his out-of-court time.
In response to this court awarding compensation at an hourly rate of $75 for in-court time, on May 20, 1996, Laura Held, the Administrator of the Assigned Counsel Plan for the Appellate Division, First Department, forwarded to this court a copy of the December 2, 1994 letter she had previously sent to the Honorable Joan Carey (then the Administrative Judge of Supreme Court, Criminal Branch, in New York County), stating her view that, "in the absence of action by the state legislature, there is no legal authority for deviation from those rates [the hourly rates established by section 722-b].” In that letter Ms. Held also asserted that, in addition to the statutory language, "reasons of policy * * * dictate against authorization of 'enhanced compensation.’ The appearance of impropriety may be created in situations in which attorneys are perceived as less zealous advocates for their clients to avoid alienating a judge with the power to increase fees. Also, the fact that some judges have promised increased fees to attorneys has occasionally resulted in pressure from attorneys on other judges to follow suit”.
Subsequently, by letter dated May 29, 1996, Isabel Alicea, Deputy Director of the Assigned Counsel Plan of the City of New York, wrote to this court indicating, "[y]our request for additional compensation for Richard Verchick in the above entitled case has been received. Please be advised that pursuant to the direction of the Appellate Division, First Department and your order * * * this voucher was processed * * * for $40.00 in court and $25.00 out of court rates. We have no authority to pay the additional enhanced fee.”
This court will treat Ms. Held’s May 20, 1996 submissions and Ms. Alicea’s May 29, 1996 letter as applications to this *576 court, pursuant to 22 NYCRR 127.2 (b)-(c), for reconsideration of its order awarding compensation in this case for in-court time at the rate of $75 per hour.
This court views the determination of the issue at bar, which touches not only on a purely legal issue of statutory interpretation, but also on several exceedingly important competing public policy concerns and issues, with great seriousness and concern.[1]
IN AWARDING COMPENSATION IN CASES THAT PRESENT EXTRAORDINARY CIRCUMSTANCES MAY COURTS EXCEED THE HOURLY RATES SET FORTH IN COUNTY LAW § 722-b?
The applicants argue that although section 722-b authorizes Trial Judges to award (in cases which present extraordinary circumstances) compensation to assigned counsel that exceeds the statutory maxima based on the class of offense charged, section 722-b requires that such additional compensation be awarded at hourly rates that may not exceed those set forth therein.
A. Applicable Statutory Provisions
County Law § 722-b, as most recently amended in relation to the issue at bar by Laws of 1985 (ch 315), provides, in pertinent part, that counsel assigned pursuant to section 722-b shall: "receive compensation at a rate not exceeding forty dollars per hour for time expended in court or before a magistrate, judge or justice, and twenty-five dollars per hour for time reasonably expended out of court, and shall receive reimbursement for expenses reasonably incurred * * * Where a defendant is charged with one or more other felonies [felonies not punishable by death], compensation shall not exceed one thousand two hundred dollars * * *
"For all other representation [other than representation on appeal], compensation and reimbursement shall be fixed by the *577 court where judgment of conviction or acquittal or order of dismissal was entered. In extraordinary circumstances a trial * * * court may provide for compensation in excess of the foregoing limits and for payment of compensation and reimbursement for expenses before the completion of representation.”
The statute sets forth two limits on compensation for assigned counsel: one based on the class of offense charged, and a second, based on hourly rates of compensation. The statute further provides that courts may award compensation, "in excess of the foregoing limits” {ibid,.), in cases which present extraordinary circumstances. One cannot read into a statute restrictions that are not set forth clearly therein. For, if the Legislature intended to impose such restrictions, it could have easily and unambiguously set them forth in the statute. Thus, section 722-b clearly and unambiguously authorizes Trial Judges to award compensation to assigned counsel in cases which present extraordinary circumstances that is both in excess of the statutory maxima based on the class of offense charged as well as in excess of the statutory hourly rates.
B. Legislative History
Although one need not look to legislative history in order to resolve a question of the interpretation of a statute whose language is clear and unambiguous, there is specific legislative history which strongly supports this court’s interpretation of section 722-b. In 1966, Governor Rockefeller vetoed S.I. 2359, Pr. 2436, which proposed to amend section 722-b to include additional crimes in the section of that statute which then specified the maximum amount of compensation to be paid to assigned counsel in capital cases. (See, People v Perry, 27 AD2d 154, 157, n 4 [1st, 2d Depts 1967].) In vetoing this bill, the Governor quoted from the Memorandum of the Attorney-General, who had sponsored and authored the original 18-B legislation a year earlier. That Memorandum, which recommended disapproval of the proposed amendment read, in pertinent part:
"[i]n fact, under present Section 722(b) of the County Law as enacted in 1965 the Court has the power to provide for compensation in extraordinary circumstances in excess of the statutory formula. The statutory formula of $15 an hour for work performed in court and $10 an hour for work done outside of court plus the maximum allowed in misdemeanor and felony cases of $300 and $500 respectfully [sic], is not the only standard to be applied in fixing appropriate fees. Furthermore, *578 counsel shall receive reimbursement for expenses reasonably incurred.
"If the amount of work done and the possible punishment involved are to be the criteria, then, should the proposed amendment under consideration be limited to capital and non-capital murder in the first degree, kidnapping and treason cases? * * * The scales now in existence can provide an equitable compensation in all of these situations.” (1966 NY Legis Ann, at 382 [emphasis supplied].)
Thus, the legislative history of the statute, as well as the opinion of the Attorney-General who drafted the statute, clearly indicate that under section 722-b, in cases which present extraordinary circumstances, trial courts have the power to provide for compensation that exceeds both the statutory hourly rates and the statutory maxima set forth for the class of offense charged.
C. Applicable Case Law
This court was only able to locate one reported case which addresses the issue at bar. That decision, Matter of Crimi (60 Misc 2d 144 [Monroe County Ct 1969]), was issued in response to an attorney’s application for compensation pursuant to section 722-b in an apparently nonadversarial proceeding in which neither the county involved nor the local assigned counsel plan appeared. In that decision, the Honorable David O. Boehm (then a Judge of the Monroe County Court and now an Associate Justice of the Appellate Division, Fourth Department) held:
"[t]his court further finds that section 722-b gives the court discretion as to whether or not it may award more than the maximum hourly rate as well as the specified maximum [based on the class of offense charged]. It states: 'In extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.’ The limits referred to are the hourly rates of $15 per in-court time and $10 per out-of-court time, with a maximum compensation of $500 in a felony matter. It would seem, therefore, that the court’s discretion would be applicable to all of the limits mentioned in the section, hourly as well as total. Otherwise, the Legislature could, and no doubt would, have clearly and simply added language that in no event could the hourly rates exceed the foregoing limits or, in the alternative, that in no event could both the hourly rates and the total maximum be increased at the same time for the same matter. Nor did the Legislature mandate, as did Congress in the Federal Criminal Justice Act of 1964 [18 USC § 3006A], *579 that payment in excess of the statutory limits requires not only 'extraordinary circumstances’hut ’protracted litigation’ as well.
"Further, such judicial discretion would seem to inhere, even in the absence of statutory authority, in the power of the court to order compensation to attorneys appointed by it to defend indigents.” (Supra, at 148 [emphasis supplied].)
UNDER WHAT CIRCUMSTANCES SHOULD A COURT AWARD ENHANCED COMPENSATION TO ASSIGNED COUNSEL IN CASES THAT PRESENT EXTRAORDINARY CIRCUMSTANCES?
This court now turns to the issue of whether such enhanced compensation should be awarded to defense counsel in this case. Careful review and consideration of the legislative history and case law precedents regarding assigned counsel and article 18-B and thoughtful consideration of the public policy issues raised are important to the determination of this question.
A. The Pre-Gideon Era
Prior to 1963, the Due Process Clause of the United States Constitution Fifth and Fourteenth Amendments had only been held to require appointment of counsel to an indigent criminal defendant in State courts in cases that presented "special circumstances” (Betts v Brady, 316 US 455 [1942]). In 1963, finding that, "[t]he right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours[,]” the United States Supreme Court held that the Sixth Amendment’s provision that the accused shall enjoy the right to assistance of counsel for his or her defense in all criminal prosecutions was obligatory on the States by virtue of the Fourteenth Amendment. (Gideon v Wainwright, 372 US 335, 344 [1963]; see also, Douglas v California, 372 US 353 [1963].)
In New York State, however, almost a century prior to Gideon (supra), it had already been well settled that, " '[t]here has been no time in the governmental history of this state when the court lacked the power to assign counsel for the defense of indigent persons charged with crime’ ”. (People v Price, 206 NY 410, 412 [1933], quoting People ex rel. Saunders v Board of Supervisors, 1 Sheld 517 [1875].) Pursuant to provisions of section 308 of the former Code of Criminal Procedure initially enacted by Laws of 1881 (ch 442) and subsequently amended on many occasions, the courts of this State have had the power *580 to appoint counsel and, in capital cases, to provide for compensation to counsel. (See, People ex rel. Whedon v Board of Supervisors, 192 App Div 705 [3d Dept 1920].)
In 1961, the Legislature enacted Laws of 1961 (ch 365 [codified as article 18-A of the County Law]) which permitted counties to establish Public Defender offices or to contract with Legal Aid Societies to provide representation to indigent criminal defendants and to pay the expenses of that representation.[2] In response to the passage of County Law article 18-A, some counties took advantage of this legislation to provide compensated counsel to represent criminal defendants. However, most counties continued to rely on the then longstanding tradition of court assignment of voluntary counsel to represent indigent criminal defendants, primarily in felony cases.[3]
B. Enactment of County Law Article 18-B and Its Amendments
In its 1965 decision, in People v Witenski (15 NY2d 392 [1965]), the Court of Appeals, after discussing the long history *581 of the right to counsel in criminal cases in New York, held that all criminal defendants, not merely those charged with felonies, had a right to appointment of counsel if they were unable to afford private counsel and that they had to be advised clearly of this right at arraignment. (Supra, at 396-398.)
In response to developments in constitutional criminal law enunciated in Gideon and Witenski (supra), Attorney-General Louis Lefkowitz drafted as part of his legislative program and the Legislature enacted Laws of 1965 (ch 878 [codified as article 18-B of the County Law]), "to provide for the assignment of counsel to persons charged with any crime who are unable to afford counsel; to provide for such assignment from the time that the accused person first appears in court to be arraigned on the charge; to require counties to adopt a systematic plan for furnishing counsel in such cases * * * and, finally, to allow compensation and reimbursement of counsel furnishing such services.” (Mem of Attorney-General, 1965 NY Legis Ann, at 32.)
Turning to the issues of compensation for counsel and the role of the judiciary, the Memorandum in support of the bill indicated:
"[w]hile New York State has been committed since 1881 to furnishing counsel to indigent defendants in criminal cases, at least to the extent of the facts in Gideon (Code of Crim. Proc. § 308), the present statute does not reach the full scope of the Gideon doctrine as it is now being unfolded by the highest Court; or, stated differently, it no longer meets minimum standards of due process. The proposed legislation would more than satisfy such standards * * *
"The proposed bill provides for counsel at least upon arraignment on the charge and with respect to every kind of crime. Quite plainly, the legal services made necessary by such a program would overwhelm what the bar could reasonably do on a voluntary, uncompensated basis. For this reason, the bill proposes that every county must, by September 1, 1966, adopt one of the several plans specified in the bill for furnishing such counsel on an organized basis. In addition, the bill proposes that counsel be compensated and reimbursed, both to deal fairly with the bar and to help ensure the quality of legal representation that is essential to due process and to the vitality of our adversary system of criminal justice * * *
"The enactment by the Congress of the Criminal Justice Act of 1964 (18 U. S. C. A. 3006A) will result in the adoption, by the middle of this year, of a plan for representation of persons *582 charged with crime in the Federal courts. The Federal Act serves as a guide to reasonable standards of compensation for assigned counsel. The rates of compensation under the proposed bill are the same as the Federal; however, where higher amounts now exist under State law for capital offenses, the higher amounts have been retained. All fees and expenses would be subject to authentication and approval by the court.” (Mem of Attorney-General, 1965 NY Legis Ann, at 33-34.)
A review of the Bill Jacket for Laws of 1965 (ch 878) reveals that approval for enactment of article 18-B, while widespread and significant, was not unanimous. County governments, recognizing that article 18-B gave the courts of this State the unreviewable authority to impose on them the costs of providing representation to all indigent criminal defendants, vigorously opposed the bill. Yet, after considering the bill and the extensive comments thereon, Governor Rockefeller signed this bill into law. In his Memorandum approving the bill, the Governor noted:
"[i]n our society, the right to counsel is as indispensable as the right to a fair trial, and both must be protected if our system of justice under law is to continue and flourish. New York has always been a leader in the protection of the rights of its citizens and the approval of [this] bill especially marks another great step forward in that tradition. In recent weeks, the highest court of this State has made it unmistakably clear that every defendant charged with crime must be afforded a meaningful opportunity to obtain the services of counsel. This bill provides the machinery for guaranteeing the true exercise of that right * * *
"[This] bill[ ] represents] a new high in the defense of liberty and I warmly commen[d] the sponsors for their efforts.” (1965 NY Legis Ann, at 525.)
In 1978, section 722-b was amended to increase the statutory formula for attorney compensation and to clarify that approval of compensation in excess of the statutory maxima under the extraordinary circumstances provision of the statute for services rendered in the trial courts rests with the Trial Judges. (L 1978, ch 700.)[4] In 1985, section 722-b was amended to increase the statutory formula for attorney compensation to its present level. (L 1985, ch 315.)
*583 C. Compensation in Extraordinary Circumstances
The Obligation of Members of the Bar to Serve the Public
In determining compensation for assigned counsel, Judges must be mindful that section 722-b was, "designed to ease the burden of lawyers who served [without compensation prior to the enactment of this statute] in assigned capacities in the representation of indigent criminal defendants. The lawyers who participate do so willingly, in the highest traditions of the profession, knowing that the limited fees provided fall short of full, or even fair, compensation for their services (People v Perry, 27 AD2d 154, 158). In so participating, the lawyers undertake an important public service, which before the statute was enacted, they performed without any compensation at all (id.).” (Matter of Werfel v Agresta, 36 NY2d 624, 626-627, supra.)
The practice of law carries with it the noble burden of defending the poor. With the enactment of article 18-B came recognition by the State of New York of the duty of the public to share this burden. Notwithstanding the current provision for compensation of assigned counsel, there is no absolute right, or for that matter, even a qualified right of assigned counsel to compensation equaling that which that attorney would receive were he or she to be retained privately. (Matter of Armani, 83 Misc 2d 252, 258-259 [Hamilton County Ct 1975].) Although, "[a]rticle 18-B sought to ameliorate what to some seemed an unfair burden upon those attorneys who would accept assignments [to represent indigent defendants without compensation prior to the enactment of this statute] * * * it was not intended to completely eliminate the pro bono publico aspect of a lawyer’s role in representing indigent defendants.” (People v Washington, 83 Misc 2d 807, 809 [Sup Ct, NY County 1975].)
Determination of the Existence of Extraordinary Circumstances
In People v Perry (27 AD2d 154, supra), the Presiding Justices of the Appellate Division, First and Second Departments, writing in their administrative capacity, first addressed the criteria for determination of whether a case presents extraordinary circumstances under article 18-B. Relying on similarities between the Federal Criminal Justice Act of 1964 and Laws of 1965 (ch 878), they held:
"the dominant thought in section 722-b of the County Law is to gear the compensation of an attorney assigned to represent an indigent defendant to the time spent on the case * * *
*584 "Using the Federal cases as a guide, it would appear that the amount of time reasonably and necessarily spent should be the sole criterion in determining whether 'extraordinary circumstances’ have been demonstrated. Such a test commends itself for objective and facile judicial administration.
"Of course, an award in excess of the maxima, based on 'extraordinary circumstances,’ is not to be made solely because an attorney shows that the product of the number of hours claimed to have been spent multiplied [by the statutory hourly rate of compensation] exceeds the [statutory limits based on the class of offense charged]. There should be a finding of 'extraordinary circumstances’ only if the court concludes from the facts that a denial of additional compensation would be grossly unjust. Even under such circumstances, counsel need not necessarily be awarded payment of the maximum per hour rates for the excess time spent.” (Supra, at 160-161.)
They went on to note that, "the type of crime involved should not ipso facto dictate the propriety of granting excess compensation.” (Supra, at 161.)
Most courts, however, have not limited the factors to be considered in the determination of whether a case presents extraordinary circumstances to whether the case involves protracted litigation and to whether the facts of the case would make the denial of additional compensation grossly unjust. Rather, they have applied variants of the well-established criteria for determination of the value of legal services in general, set forth by the Appellate Division, Fourth Department, in Matter of Potts (213 App Div 59, 62 [4th Dept 1925]) and by the Appellate Division, First Department, in Matter of Burk (6 AD2d 429, 430 [1st Dept 1958]), to wit: the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel and the results achieved.[5]
Several cases illustrate situations which do not constitute extraordinary circumstances. In these cases additional compensation has been denied because the time claimed to have been expended was not reasonable, not necessary, or expended because of the failure of counsel to make sensible ar *585 rangements to limit, to the extent possible, wasted time.[6] Additionally, it is axiomatic and bears repetition that, "[t]he mere fact that additional time [more hours than would be compensated multiplied by the statutory hourly rate, limited in total by the statutory maxima for the class of charges involved] is spent — even when such additional time is essential to the proper representation of the defendant — does not necessarily [make a case one which presents extraordinary circumstances or] entitle counsel to additional compensation.” (People v Washington, supra, at 809; see, People v Perry, supra, at 161; People v Sinkler, supra, at 104; People v Walker, supra, at 372.)
D. Relevant Public Policy Concerns
Several competing public policy concerns and issues are implicated in the consideration of the issue at bar, to wit: (1) the expenditure of precious municipal funds at a time of fiscal difficulties for our City; (2) the public perception, albeit erroneous and misguided, that Judges are more concerned with protecting defendants’ rights than they are about the general public; (3) the need to assure adequate and effective representation for criminal defendants in those cases which, by their nature, make extraordinary demands on assigned counsel; (4) the need to assure that the compensation provided to assigned counsel is fair and equitable taking into account the well-established quasi pro bono nature of the 18-B program; (5) the assertion that an appearance of impropriety may be created in situations in which attorneys are perceived as less zealous advocates for their clients to avoid alienating a Judge with the power to increase fees; and (6) the allegation that the fact that some Judges have granted enhanced compensation to attorneys has resulted in pressure from attorneys on other Judges to follow suit. The court will now address these concerns and issues.
Services provided pursuant to article 18-B are a charge against the county in question and constitute a use of precious governmental funds. Although fiscal considerations should play an important role in the determination of compensation, fiscal considerations cannot be an overriding concern when the ability of the court to carry out its essential function of the assurance of justice and due process is implicated. (See, Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d 109, 123, affd 207 AD2d 307, 308, supra.)
*586 Traditionally, the responsibility for setting compensation for assigned counsel has been vested in Trial Judges. In this regard, it has long been recognized that Trial Judges, who are intimately familiar with the intricacies of the cases before them and of individual circumstances in which the services were rendered in those cases, are in the best position to make such determinations. From a practical standpoint, others, even other Judges, who are several steps removed from the circumstances of the individual cases, are not well positioned to review the wisdom of Trial Judges’ determinations in this regard. (See, Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 87 NY2d 191, 194, supra; Byrnes v County of Monroe, 129 AD2d 229, 232 [4th Dept 1987]; People v Perry, supra, at 162, People v Elliot, 98 Misc 2d 424, 426 [Sup Ct, NY County 1979]; see also, People ex rel. Peck v Board of Supervisors, 61 App Div 545, 548 [4th Dept 1901], affd on other grounds 168 NY 640 [1901].)
Another reason why the responsibility for setting compensation for assigned counsel has been vested in Trial Judges is because this shields this important function from extrajudicial influences and considerations. The executive and legislative branches must make difficult choices to balance the needs of various competing public interests as they struggle to maintain government services in the face of multiple competing public needs and interests on one hand, and limited, inadequate resources to meet those needs and address those interests, on the other hand. Whereas the executive and legislative branches of government are, by their very nature, actively political and prone to weigh competing special interests and public opinion, the judiciary, which has a much more limited and focused role, interpreting the Constitution and laws and applying them to the cases in controversy that come before them, eschews political involvement and looks to the State and Federal Constitutions and the law to guide its decision making.
Judges are called upon far more often than the members of other branches of government to make decisions that are unpopular to the public as they struggle to interpret and apply the Constitution and laws to the legal controversies before them. In criminal cases, Judges have, inter alia, the important role of assuring the defendant’s rights are protected while affording the defendant and the People a fair and impartial forum in which to litigate and to decide defendant’s guilt. Essentially, Judges are often put in the unenviable position whereby, in keeping with their oath of office, they must follow *587 the law even when doing so leads to a result in a particular case which is publicly unpopular and personally distasteful. However, without an independent judiciary that carries out this important government function, at times making politically unpopular rulings, the rights afforded to all of us under our Constitution and laws would begin to erode. Indeed, it is in times of severe economic difficulties for the government that the role of an independent judiciary is crucial to assure that our constitutionally guaranteed rights and protections are not sacrificed in favor of economic and political expediency, particularly in relation to indigent criminal defendants who, by their very nature, are unpopular members of our society.
Turning to the specific issue of compensation for assigned counsel, spending precious public funds on the defense of accused criminals is not particularly popular, especially during periods where public funds are scarce and government programs are falling victim to ever-decreasing economic resources as they compete with one another for a needed share of a shrinking amount of public funds.[7]
The Administrator of the Assigned Counsel Plan for the Appellate Division, First Department, expresses concern that, "the appearance of impropriety may be created in situations in which attorneys are perceived as less than zealous advocates for their clients to avoid alienating a judge with the power to increase fees.” In the view of this court, this risk is so minuscule as to be nonexistent. Indeed, competent counsel must be encouraged to accept assigned cases, particularly those which present extraordinary circumstances. Thus, "[the] decision to reduce, by a significant proportion, the amount claimed by assigned counsel, is only reluctantly and sparingly made” (People v Walker, 135 Misc 2d 370, 374), and then only for good cause.[8] If one were to accept the Administrator’s logic, her concerns would arise equally when a Judge has the power to *588 increase an attorney’s compensation above the $1,200 maximum in a felony case which presents extraordinary circumstances (which she clearly agrees that Judges have the power to do) and to increase the hourly rate of an attorney’s compensation in a case which presents extraordinary circumstances (which she argues that Judges do not have the power to do).
What ought be of greater concern is the appearance and, indeed the potential, that attorneys may be less than zealous advocates because they cannot afford to invest the time to do so in cases that are complex and/or protracted because of an inability to obtain fair compensation for the additional work needed in those cases which present extraordinary circumstances. Attorneys, even the most dedicated ones, are human. Faced with harsh economic realities of being reimbursed at rates which barely cover their office overhead, they will be forced to avoid cases that are complex and/or protracted because of the diminishing economic return for their investment of the additional hours it takes to address such cases at the expense of the balance of their practices.
In this regard, the legislative history of article 18-B reveals that the defense bar, prosecutors and governmental agencies have long recognized that adequate compensation for attorneys is essential to assure quality representation and to enhance the quality of criminal justice in our State. In relation to cases which present extraordinary circumstances, Attorney-General Lefkowitz who drafted the article 18-B statute, the Legislature that enacted it and Governor Rockefeller (who signed it into law over the objection of several local governments) clearly recognized that although the need to provide compensation to assigned counsel in order to assure that indigent criminal defendants would be able to obtain meaningful representation was able to be addressed in most cases by plenary rule (the statutory formula set forth in section 722-b which is based on a combination of the statutory hourly rate and a maximum of compensation based on the class of offense charged), occasionally, cases would arise which present extraordinary circumstances. Because of their unique nature, such cases would not be able to be addressed adequately by plenary rule. Rather, such cases would be more appropriately addressed through specific, case-by-case judicial decisions by Trial Judges who, being intimately familiar with the intricacies of the cases before them and of the individual circumstances surrounding the provision of indigent defense services in those cases, would be in *589 the best position to determine appropriate compensation for those services and in doing so carry out their inherent judicial function of assuring due process and the provision of meaningful representation, thereby maintaining the dignity and integrity of the court and of the criminal justice process.
The need to vest Trial Judges with the responsibility for the determination of compensation outside of the statutory maxima set forth in the plenary rule in cases which present extraordinary circumstances is obvious when one considers that some cases which present extraordinary circumstances are, by their very nature, high profile cases. Vesting responsibility in the independent judiciary for making these compensation determinations in such cases outside of the statutory maxima set forth in the plenary rule, thereby removing such determinations from the influence of politics and public outrage over the crime and/or over defense counsel’s trial strategy, is essential to assure appropriate compensation for assigned counsel in such cases. Assuring appropriate compensation for counsel in such cases is essential to assure meaningful representation for the indigent defendant(s) involved and to ensure that competent criminal defense lawyers will continue to be willing to accept assignment in cases which present extraordinary circumstances and to make the sacrifices that are often necessary in such cases to assure the provision of meaningful representation. The wisdom of Attorney-General Lefkowitz, the Legislature and Governor Rockefeller in vesting in the judiciary the responsibility for determination of appropriate compensation for assigned counsel in excess of the statutory maxima set forth in the plenary rule in cases which present extraordinary circumstances is particularly demonstrated in Montgomery v Muller (176 AD2d 29 [3d Dept 1992]) and Matter of Armani (83 Misc 2d 252, supra).
Turning to the Administrator’s allegation that the fact that some Judges have granted enhanced compensation to attorneys has resulted in pressure from attorneys on other Judges to follow suit, assuming that this has occurred, is of no moment. Lawyers constantly urge Judges to rule in specific ways, supporting those arguments by citing as precedent other Judges’ rulings that support the position they are taking. Such conduct is inherent to the practice of law. To the extent that the Administrator characterizes such behavior as "pressuring” Judges to rule in certain ways, it is inaccurate. In this regard, because of the constitutionally guaranteed independence of the judiciary, lawyers are not in any position and have no power, *590 whatsoever, that would enable them to exert realistically any "pressure” on a conscientious jurist to rule in a specific manner.
E, Granting Enhanced Compensation
In most cases that present extraordinary circumstances, awarding compensation in excess of the statutory maximum based on the class of offense charged, yet at the statutory hourly rate of compensation, appropriately compensates assigned counsel. However, in rare cases, the award of compensation at a higher hourly rate is appropriate. Such cases are ones where many of the criteria for determination of extraordinary circumstances are not merely met, but where several of such criteria are manifested to a significant extent. Some examples of such situations would be cases that involve lengthy hearings and/or trials, cases which present multiple extraordinarily complex legal issues and cases where there are a multiplicity of indictments and serious charges. To be sure, granting compensation at higher than the statutory hourly rates should be the rare exception.
CONCLUSION
Upon careful consideration of the issue presented and of the competing public policy concerns surrounding this question, it is clear that the plain wording of the statute, the unambiguous legislative history of article 18-B, applicable case law precedents and a balancing of the relevant public policy concerns, all as discussed and analyzed in significant detail above, indicate that section 722-b authorizes Trial Judges to award compensation to assigned counsel in cases which present extraordinary circumstances, that is both in excess of the statutory maxima based on the class of offense charged, as well as in excess of the statutory hourly rates.
Turning to the specifics of the matter at bar, as described above, this matter meets many of the criteria used to determine that existence of extraordinary circumstances, several of them to a significant degree. Therefore, this court finds that this matter presents significant extraordinary circumstances and merits an award of compensation at the rate of $75 for in-court time. Although defense counsel seeks hourly compensation at the rate of $75 for both in-court and out-of-court time, it is not appropriate here. In this court’s view, such an increase should be limited to cases where there are not only significant extraordinary circumstances, but, also, exceedingly lengthy *591 proceedings (i.e., hearings and/or trial lasting more than one month, the necessity for extensive briefing of complex legal issues).
Accordingly, the applications for reconsideration are granted and, upon reconsideration, for the reasons set forth in detail above, this court adheres to its prior decision.

. Courts must take special care when they make determinations of compensation pursuant to County Law article 18-B because such determinations are not reviewable either by appeal, by proceeding pursuant to CPLR article 78, or by court administration. (See, Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d 109, 111-113 [Sup Ct, NY County 1993], adhered to on reconsideration 159 Misc 2d 142, 146-148, 157 [Sup Ct, NY County 1993], affd 207 AD2d 307, 308 [1st Dept 1994], affd 87 NY2d 191, 194 [1995]; Matter of Werfel v Agresta, 36 NY2d 624, 626-627 [1975].)

. The Governor’s Memorandum accompanying his approval of Laws of 1961 (ch 365) indicated, in pertinent part:
"[t]he fundamental guarantee of the right to counsel which is contained in our Constitution can be meaningful only if adequate representation is assured to indigent defendants in criminal cases. There has long been a need in this State for reform with respect to the representation of defendants who are without means. This bill provides the statutory authority to make such reform a reality and represents a fresh approach to the problem of providing adequate representation to all persons regardless of their ability to pay.
"I look forward hopefully to counties throughout the State making use of the authority granted by this bill to establish public defender offices and to buttress legal aid services and thereby strengthen and improve the administration of justice in our state.” (1961 McKinney’s Session Laws of NY, at 2102, 1961 NY Legis Ann, at 431.)

. The Memorandum accompanying Laws of 1965 (ch 878 [which established the 18-B program]) commented on the implementation of article 18-A noting, in pertinent part: "[p]resent law adopted in 1961 and 1962 on the recommendation of Governor Rockefeller permits, but does not require, the counties to appoint public defenders or to contract with legal aid societies to provide representation for indigent defendants. L. 1961, ch. 365; L. 1967, ch. 881. Some counties have acted with commendable vigor. There is wide variation in practice, but it is fair to say that most counties continue to rely on the traditional system of assignment of voluntary counsel from the bench, and that counsel is rarely assigned at the preliminary stages of a criminal proceeding and even more rarely is counsel assigned at any stage to represent a person charged with committing a misdemeanor. Thus, it has clearly become necessary under the recent cases to mandate county-wide plans to be effective at all stages of criminal proceedings.” (Mem of Attorney-General, 1965 NY Legis Ann, at 34.)

. A review of the Bill Jacket for Laws of 1978 (ch 700) reveals that many of those who commented on that bill viewed payment of reasonable compensation to assigned counsel as necessary to attract competent attorneys to join the 18-B panels and to facilitate the critical social goal of providing quality legal representation to indigent defendants.

. See, People v Sinkler, 157 Misc 2d 103, 105 (Sup Ct, Monroe County 1983); People v Walker, 135 Misc 2d 370, 373 (Sup Ct, Bronx County 1987); Matter of Armani, supra, at 259; Matter of Crimi, 60 Misc 2d 144, 146, supra.

. See, People v Manning, 27 AD2d 841, 842 (2d Dept 1967); People v Washington, supra, at 808-809; People v Walker, supra, at 371-373.

. The history of assigned counsel in New York, as discussed above, is illustrative of the problem. In 1961, County Law article 18-A was enacted to permit local governments to provide counsel to indigent criminal defendants. (See, n 2, supra.) Yet, few counties chose to do so. (See, n 3, supra.) In 1965, the Legislature mandated the implementation of plans to provide counsel to indigent criminal defendants. A review of the Bill Jacket for Laws of 1965 (ch 878) reveals that that legislation met with stiff opposition from local governments. Even those local governments which supported the concept argued that the State and not local governments should bear the costs involved.

. See, n 6, supra; see also, Matter of Application of Attorney, 78 Misc 2d 265 (Sup Ct, NY County 1974).