OPINION OF THE COURT
Damian J. Amodeo, J.
These child protective proceedings bring up for review the adequacy of fees authorized for services performed by attorneys acting as assigned counsel and Law Guardians in Family Court. In each of these cases assigned counsel has requested compensation at the rate of $75 per hour for all work performed. This is considerably above the $40 per hour rate set for in-court work and $25 per hour rate set for out-of-court work provided in County Law § 722-b.[1]
Prior to accepting the assignment in each case, counsel indicated an unwillingness to do so unless the court would at least consider his request for compensation at an enhanced hourly rate. In making its determination of counsel’s request in these cases the court will not address the specific facts of either case, but will review the issue of counsel fees in a somewhat broader manner. The court does note that it was only as a result of the experience and expertise of the attorney involved that each of these difficult matters was resolved with relative dispatch.
The court has selected these cases because each involves an attorney whose situation is typical of others in this County who have a long and dedicated history of serving this court as Law Guardians and assigned counsel. Samuel P. Brooke, Esq., is the senior member of a very active and well-respected three-person law firm. He and another member of that firm are certified to act as Law Guardians (Family Ct Act § 243 [b]; § 244 [b]; Judiciary Law § 35 [7]) and each regularly accepted cases in that capacity and all members of the firm had regularly accepted work on an assigned counsel basis. Within the last year, each attorney requested that his name be removed from both the assigned counsel and Law Guardian lists. Each cited financial reasons, relating to the low fees paid for these assignments, as the primary reason for his decision. It was only at this court’s personal urging and even pleading that Mr. Brooke agreed to remain an active Law Guardian.
*350 For years the need for increasing the compensation paid to attorneys for performing assigned work has been a topic of much discussion and concern. Judges and others have long expressed alarm at the consequences of failing to overcome the long-standing stalemate in addressing the need for a substantial increase in the fees paid to the attorneys willing to accept assigned work.
Virtually everyone in the executive, legislative and judicial branches of government has expressed understanding and sympathy for the plight of attorneys being asked to perform professional services at rates which have not been increased in more than 15 years. Clearly, the cost for these attorneys to maintain their professional and personal lives has increased substantially during the last 15 years. Regrettably, expressions of understanding and sympathy do not readily convert into the dollars necessary for these attorneys to pay office rent; purchase law books, computers or supplies; compensate their paralegal or secretarial staffs; or to pay their home mortgage, auto lease or college tuition.
To fully appreciate the scope of the crisis which has developed as a result of the woefully inadequate compensation being paid to these attorneys, the problem must be viewed in the proper context. In a substantial number of cases coming before this court an attorney is assigned to represent one or more of the adult litigants. In virtually every case involving a child an attorney is assigned to represent that child. As a result, the impact of the crisis created by the inadequate fee structure is felt in some way in almost every case that comes before the Family Courts throughout the State. The matters handled by these attorneys regularly involve some of the most critical issues facing families — which of two loving and able parents should have custody of a child; whether a child should be placed in an institution for inappropriate conduct; whether a parent’s rights to care for and raise a child should be terminated; or how issues of domestic violence should be addressed.
It has become increasingly difficult and time-consuming for the court to find attorneys willing to handle cases. It has also become more common for the court to assign counsel in a particular matter and mail copies of all material to the attorney, only to have the attorney reject the assignment, citing his or her unwillingness or inability to handle the matter due to an already overburdened inventory of assigned cases. In such instances the court staff is required to seek out an attorney willing to take the matter and duplicate the entire effort of prepar *351 ing a new assignment order and copying and transmitting necessary documents to the newly assigned attorney. The court often does not receive notification of the unavailability of counsel in sufficient time to make a new assignment to meet a scheduled court appearance or in sufficient time for the newly assigned attorney to effectively communicate with his or her client prior to a scheduled appearance. Adjournments, delays, inconvenience and additional costs to the court system and to the parties through loss of wages, extra childcare expenses, or absence from school, are common consequences of the State’s failure to act on the counsel fee issue.
It is a fundamental obligation of the State to provide adequate counsel for those unable to afford an attorney (see e.g. Gideon v Wainwright, 372 US 335; In re Gault, 387 US 1; Matter of Orlando F., 40 NY2d 103; see also Family Ct Act §§ 241, 249, 262). At the same time, it has always been acknowledged that attorneys undertaking the representation of indigents and children understand that their fees will necessarily be lower and that some financial sacrifice will be involved (see e.g. People v Perry, 27 AD2d 154; Matter of Werfel v Agresta, 36 NY2d 624). However, long-standing inaction by and even resistance from legislative and executive offices concerning enhanced counsel fees has had the practical effect of shifting the burden of providing legal services from the State to those attorneys still willing to take these assignments.
The overhead of a typical attorney is often nearly equal to or exceeds the amount which an attorney can expect to receive from assigned cases. Trained and experienced attorneys should not be compelled to work at rates which are far less than those established for other professionals who provide services to the court. Nor should these attorneys be compelled to work for a net wage which is less than they pay their own secretarial or paralegal staffs or for a net amount, which, in some instances, is below the minimum wage. The attorneys who continue to accept assignments out of a sense of obligation to the public should not be subsidizing the State’s obligation to provide adequate legal representation to those who cannot afford to do so.
The crisis in the court system which this inaction has caused must be addressed in some manner to insure that those who typically have no one to lobby on their behalf in the legislative or executive halls will continue to receive adequate and effective representation.
Courts have long expressed great reluctance to decide an issue in a manner which might be viewed as acting in a legisla *352 tive capacity. To avoid encroaching on the prerogatives of the Legislature courts have long practiced the exercise of examining existing legislation in an effort to craft a creative solution to a problem in the context of that legislation.
Section 722-b of the County Law,[2] and section 35 (3) of the Judiciary Law,[3] after outlining the limits for compensation, provide that in "extraordinary circumstances [a trial] * * * court may provide for compensation in excess of the foregoing limits." Traditionally, the court's discretionary application of the "extraordinary circumstances" language has been limited to the facts of a specific case (see People v Brisman, 173 Misc 2d 573;[4] People v Sinkler, 157 Misc 2d 103). Some have suggested that the "extraordinary circumstances" language applies only to the maximum dollar amount set forth in these statutes as opposed to the hourly rates themselves. In a very recent appellate ruling, the Third Department rejected an attempt to limit the interpretation of the phrase "foregoing limits" in section 722-b of the County Law to the maximum dollar amount based on the classification of the work performed as opposed to the maximum permissible hourly rate (People v Herring, 279 AD2d 275).[5]
The question presented is what “extraordinary circumstances” may the court consider in exercising its discretionary authority under County Law § 722-b and Judiciary Law § 35. Neither statute defines “extraordinary circumstances” nor gives any general or specific guidance as to how that language is to be applied.
In this court’s view, a pervasive and extremely compelling array of “extraordinary circumstances” exists, when, among many other things:
1. A large body of attorneys who have long, well and faithfully served the young children and indigent adults who come
*353 to our courts are being asked to work for compensation which is grossly inadequate. These attorneys have not received an increase in the rate of their compensation for more than 15 years. During that same period of time virtually every other person performing a service for the judicial system, every legislator and staff person, every person in the executive branch of government and most individuals in the general work force have received a substantial increase in compensation.
2. Assigned counsel and Law Guardians are being required to subsidize the representation of young children and indigent adults, when such representation is a constitutional and/or statutory responsibility and obligation of the State.
3. Attorneys, in ever increasing numbers, are requesting that their names be removed from the Law Guardian and/or assigned counsel panels or are requesting that the number of cases assigned to them be either reduced substantially or be limited to matters which traditionally consume less time.
4. A diminishing number of attorneys is being requested to handle an increasing number of cases involving more complex and time-consuming issues.
5. Repeated appeals to members of the local bar to become members of the assigned counsel and Law Guardian panels have failed to increase the number of attorneys available to serve the needs of the court.
6. Attorneys are, at times, less prepared than they might be due to the increasing case load of the dwindling number of attorneys willing to remain on the assigned counsel and Law Guardian panels.
7. Court calendars are delayed, on an almost daily basis, due to an inadequate number of attorneys willing to serve as assigned counsel or as Law Guardians.
8. Judges and court staff are required, on an almost daily basis, to expend additional time to obtain attorneys who are willing to accept a particular assignment, when such a process should only require selecting an attorney from a panel on a rotational basis.
9. The court must increasingly rely on less experienced attorneys to handle the often complex, challenging and emotionally charged matters regularly coming before the court.
10. Judges are required to write individual letters or issue lengthy decisions in order to justify each instance when that Judge believes counsel should be compensated at a rate in excess of the basic rate set forth in the County or Judiciary Law.
*354 11. Groups of attorneys practicing in some courts have indicated an intention to “boycott” the courts by refusing to accept additional assignments and other groups have commenced legal proceedings to seek increased compensation as assigned counsel or Law Guardians.
12. Those whose adequate legal representation is at stake— children and indigent adults — represent constituencies with whom the general public has little empathy. They have virtually no organized or effective voice in the political community which will ultimately determine the limits of their attorney’s compensation.
These circumstances permeate every aspect of the Family Court process and have had and continue to have an increasingly adverse impact on virtually every case coming before the court. To suggest that the foregoing factors, taken together, do not constitute “extraordinary circumstances” would beg the question. To require the courts to justify, on a case-by-case basis, the need for enhanced compensation has itself become an unrealistic and unnecessarily time-consuming exercise.
As my colleague, the Honorable James V. Brands, Family Court Judge, noted in a very recent decision on the same issue, the financial impact, which our rulings will have, cannot be ignored (Matter of Sweat, NYLJ, Jan. 24, 2001, at 31, col 1). This court is acutely aware of the competing public policy issues presented by the question being considered (see People v Brisman, supra, at 585-590). However, it is compelled to act to insure the integrity of the Family Court system in this County. Hopefully, recent judicial review of this issue will stimulate action to address a situation which can only be described as disgraceful. This court remains confident that the members of all branches of government using their collective wisdom can formulate a creative solution to a problem which many years of neglect has created. While there have been some hopeful indications that this issue may be the subject of serious consideration in upcoming months, and while the court would encourage such attention, the history and political realities surrounding this subject suggest that legislation addressing this issue is far from a certainty in the foreseeable future. Facing such realities, this court has an overriding obligation to the citizens of this County to make every effort to ensure that the very important and vital matters coming before it are handled in an effective and efficient manner.
Chief Judge Judith S. Kaye has proposed that assigned counsel and Law Guardians be compensated at the rate of $75 *355 per hour for work performed, both in and out of court. This court is certain that the rate suggested by the Chief Judge was the subject of much reflection before it was advanced. While still far below the “going rate” charged by attorneys in this and other areas, it represents a reasonable compromise between the need to be fair with the attorneys who take on these assignments and the need to preserve the public purse.
Accordingly, the court finds that extraordinary circumstances exist and directs that the vouchers submitted in the above-captioned proceedings shall be paid at the rate of $75 per hour for all work performed.
Furthermore, this holding shall be applicable to all future vouchers submitted to this court for payment and will constitute a continuing finding of “extraordinary circumstances” justifying compensation at the rate of $75 per hour for all legal services rendered by Law Guardians and assigned counsel.

. The fee structure for Law Guardians is outlined in section 35 of the Judiciary Law and parallels the wording of section 722-b of the County Law.

. Relating to compensation for assigned counsel in adult cases.

. Relating to compensation for attorneys assigned to act as Law Guardians for children.

. People v Brisman (supra, at 577-582) contains an excellent analysis of County Law § 722-b and its legislative history.

. In Herring (supra), the Court restated the holdings in Matter of Werfel v Agresta (36 NY2d 624, supra), Matter of Director of Assigned Counsel Plan of City of N. Y. (Bodek) (87 NY2d 191) and People v Ward (199 AD2d 683) which barred appellate review of discretionary awards of counsel fees (see Rotta v Rotta, 233 AD2d 152; People v Ward, 199 AD2d 683). Any challenge to counsel fees paid pursuant to County Law § 722-b and Judiciary Law § 35 must be made through administrative channels (People v Young, 185 Misc 2d 365).