*217 OPINION OF THE COURT
Timothy J. Lawliss, J.
Statement of Facts
On July 21, 1999, Joshua (date of birth Dec. 9, 1989) was taken from his mother Susan and placed in protective custody. The court issued a temporary order of removal on that same date approving Joshua’s placement in foster care. On July 23, 1999, an abuse and neglect petition was filed in the Clinton County Family Court. On October 21, 1999, Susan was found to have abused and neglected Joshua. The court issued a temporary disposition that included placement of Joshua in foster care, permitted Susan to have regular visitations with Joshua, and required Susan to maintain a stable home, participate in an evaluation by the Clinton County Alcohol Program and participate in one-on-one parenting instructions. As a result of the subsequent dispositional hearing held on November 24, 1999, a final order was entered which included the terms originally in the temporary order. The underlying facts in this case demonstrate the complex and important nature of matters dealt with in Family Court.
Joshua was diagnosed with Aspergers, a form of autism. Prior to Joshua’s removal, Susan had been his sole caretaker. Numerous child protective reports were received, investigated and indicated by the Department of Social Services regarding Susan and her care of Joshua. Preventive Services caseworkers had been assigned and were working with Susan on the issues raised in the indicated reports. Preventive Services caseworkers developed concerns regarding Susan’s mental health and ability to use proper judgment in making decisions regarding Joshua. Susan frequently used inappropriate babysitters for Joshua, including individuals who were mentally ill, alcohol or drug users and/or individuals with criminal histories.
Susan herself had a problem with alcohol. Susan would become intoxicated and permit Joshua to behave as he desired. Unfortunately, Joshua often wandered out of the apartment, inappropriately dressed, seeking someone to care for him. On several occasions, Joshua was picked up by the Plattsburgh City Police. Susan frequently did not know where Joshua was, or with whom, until the police arrived at her door. On March 5, 1999, Joshua started a fire in Susan’s apartment while Susan was passed out.
Susan would also entertain men at her one-bedroom apartment. Joshua on various occasions witnessed Susan and her *218 guests engaged in sexual activities. Susan exercised extremely poor judgment in selecting these guests, further putting Joshua at risk. In July of 1998, Joshua was sexually abused by Susan’s companion. Joshua testified in court and the perpetrator was convicted and sent to prison. During imprisonment, the individual contacted Susan by letter and Susan considered maintaining a relationship with him despite Joshua’s fears.
On July 17, 1999, Susan and Joshua were attending a community function at which Susan was drinking alcoholic beverages with friends. She did not notice that Joshua was playing near a river. Joshua eventually fell off a seven-foot wall onto the rocks of the riverbed. It was the result of this incident that Joshua was considered to be in imminent danger and taken into protective custody.
On March 20, 2000, the Clinton County Department of Social Services filed a petition seeking a permanency hearing and an extension of Joshua’s placement in foster care. Cheryl Maxwell, Esq., was assigned to represent Susan in connection with that petition. Through her diligent efforts, attorney Maxwell successfully persuaded the Department to, in effect, withdraw this extension petition. In the court’s opinion, attorney Maxwell’s litigation tactics regarding this petition were well thought out and wise. She gave her client much needed additional time before the question of an extension of placement would be considered by the court. The work done relating to this petition is one of the matters for which attorney Maxwell is seeking compensation.
On July 21, 2000, the Clinton County Department of Social Services again filed a petition requesting an extension of placement and a permanency hearing. On August 15, 2000, the Clinton County Department of Social Services also filed a petition seeking to permanently terminate Susan’s parental rights alleging that Joshua was a permanently neglected child and that he was a child of a mentally ill parent. Cheryl Maxwell, Esq., was assigned to represent Susan in connection with both these petitions. Her representation in connection with these petitions is also the subject of her current request for compensation. Ultimately, on the petition requesting an extension of placement, Joshua’s foster care was extended for an additional six-month period. With respect to the petition requesting that Susan’s parental rights be permanently terminated, the court bifurcated that petition for purposes of trial and conducted a trial on the cause of action sounding in mental illness.
After a full fact-finding hearing, the court found that Joshua was a child whose biological mother Susan is presently and for *219 the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for Joshua. The court went on to permanently transfer Susan’s guardianship and custody rights to Joshua to the Clinton County Department of Social Services. Throughout these proceedings, attorney Maxwell provided diligent, high-quality legal services on behalf of her client. This case is an example of those sad circumstances where a parent’s rights are terminated due to the parent’s inability to properly raise and safeguard her child due to circumstances beyond her control: in this case, the mother’s mental illness. Throughout the course of these proceedings, it was never alleged that Susan was in any way malicious or had evil intentions with respect to Joshua. She appeared to love Joshua, but due to her mental illness was simply unable to care for him.
In connection with these matters, attorney Maxwell had requested compensation for 7.8 hours of her time in-court and 25.4 hours of her time out-of-court. She is also requesting reimbursement expenses totaling $25 covering the service costs of subpoenas.
Right to Counsel for Indigent Litigants
Certain indigent adult litigants in Family Court have a statutory right to counsel. (See, Family Ct Act § 262.) The indigent adults entitled to assignment of counsel in Family Court include litigants involved in abuse and neglect proceedings, family offense proceedings and child custody proceedings. County Law article 18-B mandates that each county in the State of New York make provisions for the assignment of counsel for those adult litigants who are unable to afford an attorney by adopting one of four alternative plans: (1) creating a public defenders office; (2) contracting with a legal aid society; (3) creating an assigned counsel program; or (4) implementing a combination of any of the first three alternatives. (See, County Law § 722.)
Over 35 years ago, Clinton County selected the third option, the creation of an assigned counsel program. The Clinton County assigned counsel program designates all attorneys who practice or reside within the County as eligible to receive assignments and thus members of the 18-B panel of eligible attorneys.
Compensation for Assigned Counsel
County Law § 722-b provides that the County must compensate assigned counsel for their services and reimburse assigned *220 counsel for their expenses. Generally, in Family Court cases, assigned attorneys are currently compensated at a standard rate of $40 per hour for in-court work and $25 per hour for out-of-court work. (See, County Law § 722-b.) The standard rates of compensation have remained unchanged since 1986. County Law § 722-b, adopted by the legislative branch and signed into law by the executive branch, expressly grants the judicial branch (a trial or appellate court) the authority to provide “for compensation in excess of the foregoing limits” in any “extraordinary circumstances.” There is no limiting language contained in the statute as to the required nature of the extraordinary circumstances. Furthermore, the legislative history provides no parameters for the term extraordinary circumstances.
Inadequacy of the Standard Rates of Compensation
A report published in January of 2000 by the Honorable Jonathan Lippman, Chief Administrative Judge for the Courts and Honorable Juanita Bing Newton, Deputy Chief Administrative Judge for Justice Initiatives, titled Assigned Counsel Compensation in New York: A Growing Crisis (hereinafter A Growing Crisis), noted that the overhead attributed to a single attorney in a law firm of five or fewer attorneys averages approximately $34.75 per hour. (A Growing Crisis, at 8.) In Clinton County Family Court virtually every assignment is given to an attorney in a firm of five or fewer attorneys. Indeed, there is only one firm within the County having more than five attorneys.
Thus, without even accounting for income taxes, the average attorney in a small firm loses almost $10 per hour for every out-of-court hour that he or she performs services for an indigent litigant. Even for in-court hours, the average attorney’s gross profit before taxes is less than $6 per hour. Financially, an attorney would be better compensated being employed at the minimum wage than working 35 hours per week on assigned counsel cases. As of January 2000, the assigned counsel fees were at a lower level than that paid by all other States in the Nation except one. (A Growing Crisis, at 1.)
The standard compensation rates have not changed in 15 years. During that 15-year period, the New York State Senate and Assembly salaries have increased approximately 85% (from $43,000 per year to $79,500 per year). Similarly, during that same 15-year period, salaries for Supreme Court Justices have increased approximately 70% (from $82,000 per year to $136,700 per year). Thus, both economically in terms of profit *221 and comparatively in terms of professional State employees’ increases since 1986, the standard rates of compensation are grossly unjust and unfair to assigned counsel attorneys.
Effect of Grossly Unjust and Unfair Compensation
The grossly unjust and unfair compensation paid to assigned counsel has created a crisis State-wide. A year ago, Justices Lippman and Bing Newton stated that “each year fewer and fewer attorneys in New York are willing to accept these assignments.” (A Growing Crisis, at 1.) “This has lead to a crisis situation within the assigned counsel programs around the State, which in turn has had a major detrimental impact on the processing of criminal and family matters * * * the reason for this crisis is clear — the compensation paid to attorneys for assigned counsel work is now woefully inadequate.” (Id.) The Justices further stated that “[t]his is a deplorable situation for a [S]tate with a longstanding commitment to providing its citizens equal access to justice.” (Id.)
Unfortunately, the State-wide situation has not improved. Indeed, Honorable Judith S. Kaye, Chief Judge of the State of New York, in The State of The Judiciary 2001, references Justices Lippman and Bing Newton’s A Growing Crisis report and states “[t]he situation has worsened” (at 18). Chief Judge Kaye goes on to state that the assigned counsel fees were barely adequate 15 years ago, but today “they have decimated assigned counsel panels.” (Id., at 18-19.) Chief Judge Kaye describes the consequences as severe and indicates that in Family Court an increasing number of litigants are faced with the undesirable choice of postponing their matters endlessly or proceeding without representation. (Id., at 19.) Chief Judge Kaye concludes the topic by stating “[i]t is the responsibility of all of us in government to address this deepening crisis now. We simply cannot let another year pass without resolving this problem.” (Id.) ,
In certain areas in the State, the situation has become so severe that large numbers of attorneys are refusing to accept assignments at the current rates, causing substantial delays and frustration for the judiciary and the litigants, and ultimately having a negative impact upon the children affected by the proceedings. (See, Michael A. Riccardi, Panel to Refuse Family Court Cases, NYLJ, Dec. 8, 2000, at 1, col 4 [assigned counsel in two boroughs of New York City voted not to take new Family Court appointments in new year]; Michael A. Riccardi, Brooklyn 18-B Panel Lawyers Expect to Take Fewer Cases, *222 NYLJ, Dec. 18, 2000, at 1, col 3 [most lawyers who take assigned counsel cases in Brooklyn Family Court are unlikely to accept new cases in 2001]; Laura Mansnerus, A Break on the Wheels of Justice', Shortage of Lawyers for the Poor Plagues the Courts, NY Times, Jan. 27, 2001, at B1 [as of January 1, 2001 almost all of the 200 or so lawyers in New York City’s Family Court are refusing new assignments until they get a raise]; Denise A. Rajuño, Attorney: Rate Increase for Assigned Counsel is Long Overdue, Plattsburgh Press-Republican, Jan. 29, 2001, at A1 [describes inequities of assigned counsel rate from a Franklin County attorney’s prospective].)
Although the State legislators have, to date, failed to address the crisis, Trial Judges around the State, who see first hand the impact this crisis is having on the lives of children, are acting to address the situation by raising assigned counsel rates. {See, e.g., Matter of Sweat, NYLJ, Jan. 24, 2001, at 31, col 1 [Dutchess County Family Court Judge raises rates to $75 per hour for all attorneys appointed under article 18-B of the Family Court Act]; New York County Lawyers’ Assn. v Pataki, NYLJ, Jan. 22, 2001, at 25, col 4 [Lawyers’ Association granted standing to bring suit challenging the pay rates set forth in County Law § 722-b]; People v Brown, NYLJ, Jan. 19, 2001, at 28, col 4 [Bronx County Supreme Court Judge sets rate and awards compensation in criminal matter above statutory standard rates].)
As is obvious from the above, the crisis in the assigned counsel system is striking the Family Courts particularly hard. .The large number of assignments that must be made by Family Courts around the State combined with the amount and type of work necessary to properly represent a Family Court litigant undoubtedly explains why Family Courts feel the hardest impact of the crisis.
Turning now to the Clinton County Family Court, there has been a prolonged crisis in the assigned counsel system that continues to worsen. Within the last three years, approximately eight attorneys who voluntarily accepted large volumes of 18-B assignments, no longer accept any Family Court assignments because they have either left Clinton County or have left the private practice of law. During that same time period, there have been almost no new attorneys establishing existing practices in Clinton County seeking Family Court assignments. Compounding the problem, the case load in Clinton County Family Court has dramatically increased over the past two years. Cases in which adult indigent litigants are commonly *223 assigned counsel have increased by approximately 37%; and more specifically, custody cases have increased approximately 55% and abuse and neglect proceedings have increased approximately 33%.*
During 2000, the Clinton County Family Court was required to make an average of 61 article 18-B assignments per month. Obviously, the demand for assigned counsel is driven by forces outside the control of the court. Magnifying the problem is the fact the court also makes approximately 60 Law Guardian assignments per month. There is a substantial overlap between the attorneys who handle Law Guardian assignments and article 18-B assignments. During 2000, the court assigned approximately 35 attorneys to represent all indigent adult litigants in the Clinton County Family Court. Of these 35 attorneys, the court estimates that only approximately five desired to voluntarily accept assignments. Furthermore, the volunteers were not willing to accept an unlimited number of assignments. These volunteers were willing to accept only a small percentage of the total article 18-B assignments.
For over a year, the number of volunteers has been substantially inadequate to meet the demand for assigned counsel. In order to fill the gap between supply and demand, the court has been forced to use orders to compel attorneys to accept assignments. Thus, the court has been compelling attorneys to represent indigent individuals at grossly unjust and unfair rates of compensation. This process of compelling attorneys to represent indigent adult litigants at those rates is also grossly unjust and unfair to the adult litigants as the litigants in many cases learn that the attorney assigned would prefer not to represent the litigant under these circumstances. The litigant’s confidence in the judicial system is understandably undermined when the litigant discovers that the attorney assigned to his or her case is opposed to accepting the case and is representing him or her solely to fulfill the attorney’s legal obligation under a court order.
The process of ordering attorneys to represent litigants necessitated by this crisis has yet another negative impact upon the judicial system. A Family Court Judge is required to make many difficult decisions regarding the future of children’s *224 lives. The use of the court’s time spent compelling attorneys to accept assignments is an unproductive and wasteful use of judicial resources. The court frequently receives motions and correspondence from attorneys seeking to be relieved from assignments. The court must give each request full and fair consideration. An attorney’s efforts to avoid assignments place significant demands on the court’s time. In particular, in addition to motions and correspondence, two attorneys have brought CPLR article 78 proceedings against the Clinton County Family Court Judge seeking orders prohibiting the Family Court Judge from compelling the attorneys to represent adult indigent litigants. One attorney has also made motions in the Appellate Division seeking the same type of relief. In addition, the Family Court has been forced to hold one attorney in contempt of court, who flatly refused in open court to represent an adult litigant. The court’s focus and time should be solely on the best interest of the children, and not spent compelling attorneys to represent litigants against their wishes.
The real victims of this crisis are the children that come before this court. Our system will only serve the best interest of the children when the litigants in the court proceedings are represented by able, willing and enthusiastic attorneys. A Family Court Judge can best serve the interests of the children, when the Judge’s time is not being wasted compelling attorneys to represent litigants. The focus of the litigation must be on the children and only on the children.
The court has waited for a solution to the crisis. To date, however, a solution has not been forthcoming. The reluctance of New York State to increase the standard assigned counsel rate has been well publicized. On a local level, the Clinton County Bar Association set up a committee to address the assigned counsel problem several months ago. However, the committee, formed several months ago, has only made one proposal to the Bar Association. Specifically, the committee chairperson has proposed that the assigned counsel plan be modified to make participation purely voluntary and thereby prohibit the Family Court from compelling attorneys to represent adult litigants. The committee has not made any recommendations to the Bar Association as to how to address the shortage of volunteers.
The County as well has also been unwilling to assist the court. In early January of 2001, the court wrote the Clinton County Assigned Counsel Administrator. The court cited a section of the assigned counsel procedures which states:
*225 “A magistrate may at all and any times contact the administrator by telephone or otherwise and request a recommendation of one or more attorneys for assignment. The administrator is charged with the duty to insure that the assignments will be fairly and evenly distributed.” (Clinton County Assigned Counsel Procedures § I [General] [emphasis supplied].)
The court indicated that it intended to request a recommendation on all future assignments. By letter dated January 12, 2001, the Assigned Counsel Administrator stated that she was not in a position to provide the court with recommendations.
Solution to the Crisis
As more and more Judges throughout the State are discovering, one solution to the crisis is to pay attorneys, who will voluntarily and enthusiastically represent Family Court litigants, a fair and just compensation. Retained attorneys handling family law matters in Clinton County charge in the range of approximately $100 to $200 per hour. Preparation is essential to successful litigation, and therefore the hours the attorney spends out of the courtroom are at least as important as the hours the attorney spends in the courtroom during litigation. After considering the Bar Association’s ethical obligation to represent indigent individuals and the range of hourly rates charged by retained attorneys in Clinton County, this court finds that compensating attorneys at the rate of $75 per hour for their work both in-court and out-of-court is fair and just. The court hopes and believes that this increase in rate is sufficient to provide the court with sufficient volunteers to adequately represent adult indigent litigants.
This court is not unsympathetic to the additional fiscal burden this solution places upon the County. Fiscal considerations, however, cannot take precedent over the court’s ability to carry out this essential function which is to determine the best interest of the children.
Summary
The court finds that the unfair and unjust compensation rates paid to 18-B attorneys have led to a shortage of attorneys willing to voluntarily represent adult indigent litigants in Clinton County Family Court and that this shortage has, in turn, created a crisis in the Clinton County Family Court which has a negative impact upon the children who are the subject of *226 court proceedings. Furthermore, this crisis constitutes extraordinary circumstances as that term is used in County Law § 722-b, which authorizes the court to compensate attorneys at a rate higher than the standard statutory rate set forth in County Law § 722-b. Therefore, upon the facts of this case, which demonstrate the profound consequences that Family Court litigation has upon children and for the reasons outlined above, the court shall award Cheryl Maxwell, Esq., compensation at the rate of $75 per hour for in-court time and out-of-court time, as well as reimbursement of her expenses.
Accordingly, pursuant to County Law § 722-b, it is hereby ordered that the voucher of Cheryl Maxwell, Esq., in the above-referenced matter is hereby approved and allowed and fixed in the compensation of assigned counsel, including disbursements, in the amount of $2,515; and it is further ordered that the County of Clinton is hereby directed to pay Cheryl Maxwell, Esq., the amount of $2,515 forthwith; and it is further ordered that the amount of $2,515 be paid by the Treasurer of the County of Clinton to Cheryl Maxwell, Esq., forthwith.

 This statistical analysis is based on the New York State Unified Court System’s Family Court case load activity report for Clinton County for the year to date/term 12 of 2000. The calculations are based on the first 12 terms of 1998 as compared to the first 12 terms of 2000. There are 13 terms in each calendar year.