OPINION OF THE COURT
Eugene L. Nicandri, J.
Defense counsel in this now-completed case moves for approval of his voucher for legal services and disbursements, as *586 provided in County Law § 722-b. This written decision and order is made necessary because counsel seeks approval for payment in excess of both the hourly rates and the maximum dollar amount specified for legal representation in all but extraordinary circumstances.
Indigent Defense in St. Lawrence County
Defendants who cannot afford to retain counsel in a criminal case in this county are initially referred to the office of the Public Defender. Sometimes that office cannot represent a particular person, for a variety of reasons. There may be conflict of interest either (1) for the attorney, or (2) because the office already represents someone else whose interests conflict with those of the defendant, or (3) there may not be enough staff attorneys available to handle a particular case. In addition to handling felony cases in County Court, approximately four staff attorneys must handle most of the indigent criminal representation in Ogdensburg City Court and in the 32 town and five village justice courts. When, for whatever reason, the Public Defender’s office cannot handle a particular case, the Indigent Defense Coordinator assigns it to an attorney who has agreed to work under the terms of the assigned counsel program. The Indigent Defense Coordinator assigns cases after considering, among other factors, the type of case and the knowledge and experience of the particular attorney assigned, in order to assure a level of legal skill appropriate to the case. The assigned counsel plan has been approved as conforming with the requirements of County Law §§ 722 and 722-b.
State Statute and Rules
By state law, beginning in January 1986 the rates for such compensation were set at $40/hour for in-court work, $25Zhour for out-of-court work, plus expenses reasonably incurred.[1] Each claim for compensation must be accompanied by a sworn statement specifying the time expended, services rendered, expenses incurred,[2] and reimbursement or compensation applied for or received in the same case from any other source.
*587 The statute also provides that in extraordinary circumstances the court may approve compensation in excess of those limits. The phrase “extraordinary circumstances” is not defined in the statute.
The Rules of the Chief Administrator of the Courts[3] require that an attorney who seeks compensation for assigned counsel services in excess of statutory rates due to extraordinary circumstances must submit to the court a detailed affidavit stating the nature of the proceeding, the manner in which the time was expended, the necessity therefor, and all other facts demonstrating extraordinary circumstances. The claim is also required to state the disposition of the matter. Orders approving excess compensation of assigned counsel work due to extraordinary circumstances are subject to review by the district administrative judge at the request of any person or governmental body affected by the order.
Counsel’s Application
Mr. Manning’s application fully complies with these rules. In addition to the usual documentation of time and disbursements he has submitted a seven-page combination affidavit of facts and memorandum of law concerning the legal standards under which such applications should be reviewed.
Counsel accepted assignment on November 30, 2001 to represent the defendant in this action on charges of fourth and fifth degree criminal possession of stolen property (class E felony and class A misdemeanor) then pending in local court. A preliminary hearing had already been scheduled for two days later, and defendant was in jail because he was unable to provide bail. Defendant was released under probation supervision, and the hearing was adjourned for several days so that defendant could be arraigned on new charges of fourth degree criminal possession of a weapon and endangering the welfare of a child (both class A misdemeanors). Upon interviewing defendant and his family, counsel learned that defendant had made an incriminating statement to the police. In the course of the statement he admitted to participation in at least three as-yet uncharged second degree burglaries (class C felonies) and other crimes including larcenies and automobile break-ins. With this information in hand counsel approached the District Attorney with a plea proposal to resolve all of these charges.
While this proposal was under consideration, counsel learned of impending arrests of the defendant, returnable in three dif *588 ferent courts, for five additional felonies independent of the ones mentioned in the statement. Defendant was arrested on fourth degree grand larceny and third degree burglary (Town of Louisville), third degree burglary and petit larceny (Town of Norfolk), and second degree forgery (Village of Potsdam), and was arraigned on all of these charges in Norfolk Town Court. Mr. Manning was assigned to represent defendant on these cases as well.
A substantially revised plea proposal was worked out, submitted to the court, defendant and his family and the District Attorney, covering all of the filed charges and the uncharged but known counts. A superior court information was filed in this court. In a plea conference the court committed to impose after plea no state prison time, despite defendant’s substantial misdemeanor record. The court indicated a strong possibility of a split sentence, with 120 days of local jail time followed by electronic home monitoring under a probationary term. Part of the consideration for this beneficial promise was defendant’s agreement, secured by his attorney, to give truthful testimony against a defendant charged with murder. The plea was entered, and defendant was remanded, still in lieu of bail, pending sentence. In April 2002 the court imposed an interim probationary sentence, and adjourned sentencing for one year.
Counsel requests approval of his billed hours at an enhanced rate of $75 per hour for both his 9.7 hours of in-court time and 37.9 hours of out-of-court time, plus disbursements, noting that his present hourly rate in retained cases is $150 per hour. The 9.7 hours of in-court time, at the statutory rate of $40/ hour would compute as $388, compared to the $727.50 requested at $75/hour. The 37.9 hours of out-of-court time computes as $947.50 at the statutory rate of $25/hour, or $2,842.50 at the requested rate of $75/hour. Without regard to the expenses, which are not included in the cap, and which are the same in either case, the maximum statutory fee would therefore be $1,200 plus expenses, and the requested fee would be $3,570 plus expenses, a difference of $2,370. That is the additional amount which the court is asked to approve under the rubric of extraordinary circumstances.
The application is based upon two related but distinct grounds: (1) that extraordinary circumstances in this particular case justify an upward departure from the statutory hourly rate and dollar cap, and (2) that such compensation is required in order to assure defendant’s fundamental constitutional right to the assistance of competent and effective counsel.
*589 Counsel asserts that he is an attorney first admitted in the Second Judicial Department, with over 30 years of experience in the practice of criminal law. He has tried a considerable number of major felony cases both as defense counsel and as this county’s elected District Attorney, and he continues to have an active criminal law practice covering the preparation, briefing and argument of appeals in the Appellate Division, Third Judicial Department, and in this court, and in the local courts, as well as in neighboring counties. He asserts that over one half of his practice is devoted to cases involving criminal law, and notes that experienced attorneys are finding it increasingly difficult to justify taking cases at assigned counsel rates because the compensation is so grossly inadequate. He further notes that it is unfair to ask experienced counsel to work at such low pay, especially in light of both the experience and skill of counsel, and the rising costs of maintaining a law practice.
Consumer Price Index and Inflation Figures
The court may properly take judicial notice of the Consumer Price Index and of government inflation statistics. (Sommers v Sommers, 203 AD2d 975 [4th Dept 1994]; City of Hope v Fisk Bldg. Assoc., 63 AD2d 946 [1st Dept 1978]; Fisch, New York Evidence §§ 1051, 1060 [2d ed].)
Without determining the application on this ground, the court notes that the United States Bureau of Labor Statistics has reported[4] that the Consumer Price Index for all urban consumers has increased from an annualized average of 107.6 in 1985, when the current assigned counsel rates were set, to 177.1 in 2001. In effect this shows that consumer prices increased almost 65% from 1985 to 2001.[5] During that same time frame, compensation to skilled assigned counsel has increased not at all, either in hourly rates or in total compensation absent extraordinary circumstances.
A different, but equally compelling insight into the decreased value of being paid today at rates set in 1986 may be gleaned from a price comparison calculator available on the Internet at *590 one of the United States Government’s Federal Reserve Bank Web sites.[6] There one may enter the years to be compared, the number for one year, and the Web site calculator will compute the equivalent cost in the other year. It is common understanding that the same number of dollars today .buys less, due to inflation, than it did in 1986. Using this tool, one learns that $25 in 2002 is the equivalent of $15.28 in 1986, and that $40 in 2002 is the equivalent of $24.45 in 1986. Comparing the ratio of these two sets of numbers (15.28:25.00 and 24.45:40.00) shows that the value of pay at this rate today is only 61% (rounded) of what it was when the rate was set. Stated differently, lawyers are being paid 39% less, in terms of buying power today, than they were in 1986, since the rates have not changed.
When one adds such data to the common notion that attorneys, like other professional workers, expect to make more, not less, than they did 16 years ago, and that with increasing dependence on word processing and other sophisticated equipment necessary to the law office, coupled with inflation in labor costs for support staff, rent and professional library and insurance, it becomes clear, at least to this court, that the failure of legislative bodies to raise these rates has itself become an exceptional circumstance which may properly be considered by the court in determining compensation for services under County Law article 18-B.
Case Law
Thirty five years ago the first New York appellate court considered the approval of excess counsel fees under the “extraordinary circumstances” language in County Law § 722-b, and gave the statute a narrow construction. (People v Perry, 27 AD2d 154 [1st Dept 1967].) Also under review in that case was language contained in the Bar Association contract to provide legal services to indigents in criminal cases. That language was slightly broader than the statute itself, authorizing additional compensation not only for extraordinary circumstances but also for protracted representation. The plan provided for mandatory review of all excess compensation awards by the Presiding Justice of the Appellate Division. The Court noted initially that the basic legislative scheme at work in section 722-b was “to gear the compensation of an attorney assigned to represent an indigent defendant to the time spent *591 on the case. It must be assumed that the Legislature, in providing for compensation on an hourly basis, intended that such a method for evaluating legal services was the most practical method for treating all assigned counsel upon an equal footing.”[7] The Court then considered whether in an extraordinary circumstances application it was limited to the number of hours of service provided, or whether it could also consider other factors. The Court noted that at that time (1967) the federal cases under the cognate Federal Criminal Justice Act of 1964 based extraordinary circumstances compensation on the amount of time reasonably spent on the case. The Court also observed that notwithstanding an attorney having spent a great deal of time on a case, a court should not approve additional compensation unless the court were to conclude that denying such compensation would be “grossly unjust.”[8] Noting that it would be difficult for a reviewing Presiding Justice of the Appellate Division to review an excess fee award with only the form showing the number of hours spent on the case, the Court developed the now familiar requirement, later engrafted into the statute and the Rules of the Chief Administrator of the Courts, that justification for the claimed extraordinary circumstances must be explained in an affidavit from counsel.
Long before the present rates of compensation were set, questions arose as to whether the amount of a fee award was amenable to judicial review, upwards or downwards, and if so, under what procedure and in which forum. In Matter of Werfel v Agresta (36 NY2d 624 [1975]), for example, the Court of Appeals held that a trial court’s fee award was not subject to direct judicial review as part of an appeal, but that an adjustment of the award could be sought from the appropriate administrative judge. Writing 27 years ago, the Court noted that historically lawyers used to donate legal services for indigent defense without fee, in the highest traditions of the bar, and that the statutory fee rates were never intended to be full, or necessarily even fair, compensation for the value of services provided.[9]
There developed a sort of tug-of-war between trial courts, administrative judges and appellate courts in the search for *592 clarification of who had the final authority with respect to setting an attorney’s fee under the 18-B rates, and in particular, who had the last word as to when the “extraordinary circumstances” mentioned in the statute had been demonstrated. Needless to say, attorneys would tend to view the statutory fees as inadequate in a particular case and would seek an increase. Conversely, counties, which had to pay the bills at rates set by the State Legislature with no funding provided, resisted payment of awards exceeding the statutory rates and per case cap. It is also clear that the courts, when addressing these issues, have tried mightily to avoid reviewing the issues in broad constitutional terms where that could be avoided. See, as an example of this process, Byrnes v County of Monroe (129 AD2d 229 [4th Dept 1987]), which held that a rule requiring prior approval of a supervising judge before payment of compensation in excess of the statutory maximum had to yield to the provisions of County Law § 722-b granting the trial court authority to award “excess” compensation.
When the same issue came up in the Third Department an additional factor was added to the discussion. Agreeing with the Fourth Department holding in Byrnes, the Third Department, in Matter of Kindlon v County of Rensselaer (158 AD2d 178 [3d Dept 1990]), also found that a 1978 amendment to the New York State Constitution[10] added authority for a legislative delegation to the Chief Administrator of the Courts to review fee awards exceeding the statutory maximum, but that the constitutional authorization had not been clearly implemented by the Legislature. As a result, for the time being, the trial courts still had the “last word” in setting fees.
Several cases then tried to list and quantify the dollar value of various factors to be considered by the court in evaluating extraordinary circumstances. People v Sinkler (157 Misc 2d 103 [Sup Ct, Monroe County 1993]) enumerated eight factors which it identified from a reading of Perry and other cases, and then added three of its own: (1) the nature and extent of the services, (2) the actual time spent, (3) the necessity for the time spent, (4) the professional standing of counsel, (5) the results achieved, (6) the complexity of the issues, (7) the seriousness of the charges, (8) the cost of such services if *593 provided by private counsel, (9) the inclusion of a codefendant or multiple defendants in the proceeding, (10) a highly publicized trial, and (11) an unusual ancillary proceeding.
In People v Ward (199 AD2d 683 [3d Dept 1993]) the Court held that the Appellate Division lacked jurisdiction to entertain an appeal involving compensation of counsel in a criminal case, and that the county lacked power claimed under County Law § 369 (2)[11] to review and deny payment of counsel.
The Court of Appeals spoke again on the subject of authority to review excess compensation awards, this time in the related context of a fee for a social worker appointed by the court to work with indigent defendants, in Director of Assigned Counsel Plan of City of N.Y. [Bodek] (87 NY2d 191 [1995]). The court had appointed Mr. Bodek at an hourly rate of $100, notwithstanding a Chief Administrator’s rule setting a maximum hourly rate of $45, and a statutory cap of $300 under County Law § 722-c. The Court affirmed the trial court and the Appellate Division’s setting of the higher rate, holding that the trial court’s order setting the fee was not judicially reviewable.[12] The fact that appellate courts lack authority to review excess fee awards, though, cuts both ways. In Matter of Gilman v Golfinopoulos (284 AD2d 224 [1st Dept 2001]) Supreme Court held that the nonjusticiability of extraordinary circumstances excess fee awards meant that petitioner could not bring an article 78 proceeding to compel the county to pay such a fee, awarded by Family Court. To hold otherwise would entail the article 78 court reviewing the fee decision of the Family Court Judge.
At least one court has interpreted case law as requiring a careful and limited interpretation of extraordinary circumstances. (People v Brisman, 173 Misc 2d 573 [Sup Ct, NY County 1996].) There the court traced the legislative history of *594 excess fee awards, citing Perry and Werfel as a reminder that representing the poor is a “noble” burden of the practicing bar. That burden, while shared by the public due to the enactment of article 18-B, was not intended to be eliminated through the provision of some payment for such work.[13] The court goes on to note that most courts consider (1) the nature and extent of the services, (2) the actual time spent, (3) the necessity therefor, (4) the nature of the issues involved, (5) the professional standing of counsel, and (6) the results achieved, as factors to be weighed when considering extraordinary circumstances.[14] The court also identifies various competing public policy interests which inevitably become factors in the weighing process.
In a comment that was prescient as to issues which would arise in later litigation, the court noted that:
“What ought be of greater concern is the appearance and, indeed the potential, that attorneys may be less than zealous advocates because they cannot afford to invest the time to do so in cases that are complex and/or protracted because of an inability to obtain fair compensation for the additional work needed in those cases which present extraordinary circumstances. Attorneys, even the most dedicated ones, are human. Faced with harsh economic realities of being reimbursed at rates which barely cover their office overhead, they will be forced to avoid cases that are complex and/or protracted because of the diminishing economic return for their investment of the additional hours it takes to address such cases at the expense of the balance of their practices.”[15]
One need only read the New York Law Journal to see increasing numbers of cases approving extraordinary circumstance fees, and even so, significantly large numbers of attorneys are simply refusing any longer to participate in assigned counsel programs because they can no longer cover their overhead *595 expense while working on such cases. In Brisman the court went on to weigh the various factors it cites, and approved $75/ hour for in-court services, but not for out-of-court work.
It is clear that courts do indeed review vouchers for payment carefully, and sometimes disallow part of the requested fee, while still approving excess compensation. See, for example, People v Fortune (178 Misc 2d 499 [Sup Ct, Bronx County 1998]), where the court found that experienced counsel on a murder case justified his request for excess hours (counsel was only charging at the $25/40 hourly rates) because of the scope and complexity of the case, but had also wasted some time after the case was transferred to the trial part. The posttransfer portion of the requested fee was therefore reduced, but the total fee was still approved in excess of the statutory cap.
A recent Family Court decision approved excess compensation for assigned counsel in a child protective proceeding, using a totality of circumstances analysis, analogizing to the extraordinary circumstances authority under County Law § 722-b, although ruling under Family Court Act § 262. The court questioned the logic of distinguishing between in-court and out-of-court hourly rates in light of the substantial value of the out-of-court negotiations involving counsel, and approved a fee at an across-the-board $75/hour for all services. (Department of Social Servs. [Maitland] v Mitchell, 184 Misc 2d 587 [Fam Ct, Dutchess County 2000] .)[16]
In People v Young (185 Misc 2d 365 [Sup Ct, Monroe County 2000]) the court rejected a request to compensate assigned defense counsel at the same rate as approved for the appointed special prosecutor. There was neither a logical basis nor decisional precedent for doing so, and extraordinary circumstances had not been shown. Since the application was prospective (at the beginning of the case), it was also premature.
Part 127 of the Rules of the Chief Judge, previously cited, was amended to its present form effective April 16, 2001, to make specific provision for review of fee awards by district administrative judges. Less than two months later the first reported such decision was issued in People v G.C. (2001 NY *596 Slip Op 40058 [U] [Sup Ct, Queens County, June 12, 2001] ).[17] The decision consolidated several fee awards for review purposes. In each the trial court had approved vouchers in excess of those authorized in County Law § 722-b. Justice Fisher, the reviewing Justice, noted his constitutionally based authority under rule 127.2 to undertake the review. He then noted the historical evolution of judicial thinking about fee awards in indigent defense cases, but also noted the mounting crisis in availability of an adequate pool of skilled counsel willing to take these cases. He observed that “even if the legislature remains unmoved by considerations of fairness to attorneys, it should still increase compensation rates out of concern for the criminal justice system itself.”[18] The court then recounted the experience of numerous trial judges across New York State, that:
“The profound inadequacy of compensation has markedly reduced the number of attorneys choosing to accept assignments to represent indigent defendants. And among those now unwilling to do so are many experienced and highly-skilled defense attorneys. In many instances, the smaller pool of available and competent lawyers has resulted in delays in moving cases to trial or disposition, and has given rise to the risk that the legal assistance provided to indigent defendants will be less than effective.”[19]
Justice Fisher then noted that such delays hurt those defendants who are innocent, risking wrongful conviction, and at the same time unwittingly aid the guilty, as witness’ memories fade over time. The court noted that one New York Supreme Court Justice had reached the conclusion that the Legislature’s persistent failure to address the inadequacy of compensation had caused “an institutionalized, systemic crisis,” so severe that the Justice had found that fact alone to be sufficient demonstration of extraordinary circumstances, and thereafter her court planned to award enhanced compensation for even entirely unremarkable cases.[20] While describing himself as sympathetic to that view, Justice Fisher believed himself *597 bound, pending overdue legislative revision of the pay rates, to continue to use extraordinary circumstances analysis on a case-by-case basis. He then turned to consideration of the two vouchers before him, both approved by the trial judges at $75/hour. One he modified downward, finding that generalized assertions of adverse impact on the rest of the attorney’s law practice were unpersuasive and insufficient, and therefore the fee request was partly disallowed. In the other he declined to modify the $10,762.50 award at $75/hour for 2V2 years of work on a complex murder case where counsel documented what services he had provided, and the billed hours matched the narrative description of services.
The evaluation of such awards has continued apace, on a case-by-case basis, with varying results. In Matter of AA v MA (2001 NY Slip Op 50104[U] [Fam Ct, Suffolk County 2001]) the court approved $75/hour for all services provided. Yet in People v Lott (2001 NY Slip Op 50141 [U] [Sup Ct, Erie County 2001]) the District Administrative Judge for the Eighth District modified a trial court fee award of $6,041.25, by reducing it to the statutory limit of $1,200 plus an additional award of $3,500 which the Judge found “reasonable and appropriate” in light of the unique circumstances of the case. There the total award, after reduction, was $4,700.
On a related but distinct legal front, two cases are now working their way through the federal and state courts on the question as to the constitutional challenges to the inadequate pay rates in County Law § 722-b. In Nicholson v Williams (203 F Supp 2d 153, 256 [ED NY]) the court, focusing on the rights of mothers, not the rights of counsel, found that
“The court is at present concerned only with the rights of mothers to effective counsel. The evidence is overwhelming that the 18-B system deprives them of that right. The 18-B compensation rules, as currently applied, systematically deprive indigents of effective counsel. As applied to subclass A mothers, who have a federal constitutional right to appointed counsel in New York, the 18-B compensation system violates the right to be appointed effective counsel, as guaranteed by the Fourteenth and Sixth Amendments of the United States Constitution.”
The court went on to detail its significant due process concerns about the 18-B system in New York. The other case is New York County Lawyers’ Assn. v Pataki (188 Misc 2d 776 [Sup Ct, *598 NY County 2001], affd, sub nom. New York County Lawyers’ Assn. v State of New York, 294 AD2d 69 [1st Dept 2002]). There the court found that a county lawyers’ association had standing to challenge statutory caps on compensation for assigned counsel in criminal and family law cases, and found that the existence of the statutory caps made it difficult for the association to discharge its duty to provide and maintain a list of attorneys available for assignment, and this situation constituted an injury to the association different from any injury to the public. Plaintiff is seeking declaratory and injunctive relief. The Appellate Division found the issues justiciable, and agreed that the association had standing, even though in a sense it was asserting the rights of other litigants in their own cases.
Evaluation of Application
As previously noted, counsel has based his fee application both on a showing of extraordinary circumstances and on the client’s right to the effective assistance of counsel, which right counsel asserts is imperiled if the court were not to approve enhanced compensation. Since the court intends to resolve the issue, at least in the first instance, under extraordinary circumstances analysis, it need not continue at this stage with the constitutional analysis. To do so would likely prompt the court to require notice to the Attorney General under Executive Law § 71, and to St. Lawrence County as a real party in interest. In all likelihood hearings would be required, with attendant delay and significant additional time for defense counsel who has yet to be paid. The court therefore reserves decision on that aspect of the claim, and will revisit it only on further application by counsel after a showing of necessity based on significant reduction in fee upon administrative review.
The court finds that Mr. Manning is highly competent and has substantial experience as trial counsel in criminal matters. Precisely because of this great experience he was able to discern which issues were important to pursue and which were not. Early on he perceived the value to his client of trying to ascertain all of the charges potentially to be lodged against his client, and then made a reasoned proposal to resolve them in a way agreeable to the courts and to the prosecution. The court finds the time expended for both in-court and out-of-court work reasonable and fully documented. When the plea arrangement was jeopardized by the discovery of new as-yet uncharged crimes, counsel wasted no time in trying to arrange a revised *599 plea to take them into account. In doing so he probably saved county taxpayers money by not requesting a significant number of additional hearings. Counsel achieved a good result for his client by using the skills of good lawyering. It is imperative that the availability of counsel with this level of skill be encouraged and supported to the extent that the fee requests are justified. Here extraordinary circumstances have been shown. The request is appropriate, and is approved in full.

. L 1985, ch 315, § 3, amending County Law § 722-b.

. Interestingly, expenses and disbursements have kept up with inflation, even though payment for services has not, since disbursements are, when approved, reimbursed at actual cost to the attorney in the year in which the voucher is submitted.

. 22 NYCRR 127.2.

. United States Department of Labor, Bureau of Labor Statistics, Washington, D.C., Consumer Price Index, All Urban Consumers (CPI-U), US * city average, all items. 1982-1984 = 100 (<http://www.minneapolisfed.org/ research/data/us/calc/histl913.cfm> [last modified Oct. 16, 2001]).

. The increase in the CPI may be expressed as a percentage by use of the formula ([N2-N1]/N1) x 100, where N2 represents the 2001 index figure and N1 represents the 1986 figure. Hence, ([177.1-107.6]/107.6) x 100 = 64.59%.

. <http://www.minneapolisfed.org/research/datEt/us/calc/histl913.cfin> (last modified Oct. 16, 2001).

. 27 AD2d at 160-161.

. 27 AD2d at 161.

. (36 NY2d at 627). This would appear to be dicta, however, since the Court found that the award was not judicially reviewable and therefore affirmed the dismissal of the review petition. It would come as no surprise to this court, were a fact-finding hearing to be conducted, that the economics of law practice in this part of the country have changed significantly, and that *592 as a result, many lawyers can no longer afford to give away what was once freely offered and provided. But no such facts are presently before the court.

. NY Constitution, article VI, § 28 gave the Chief Judge and the Chief Administrator of the Courts complete administrative control over the trial courts. See interpretive cases cited in Kindlon (158 AD2d at 180-181).

. The general power of a county to review and deny payment of a charge except as otherwise provided by law must yield to specific provisions of section 722-b giving the court the power to determine compensation in the first instance. (199 AD2d at 684-685.)

. See also, People v Herring (279 AD2d 765 [3d Dept 2001], lv denied 96 NY2d 711 [2001]), where the payor county tried unsuccessfully to get the appellate court to review excess compensation awards on a theory of statutory construction, rather than extraordinary circumstances, and also see Rotta v Rotta (233 AD2d 152 [1st Dept 1996]), in which the Court held that Supreme Court’s order setting a Law Guardian’s fee at $35,000, to be split evenly between the parties to a dissolution proceeding, was not judicially reviewable. Further in accord, see Matter of Levenson v Lippman (290 AD2d 211 [1st Dept 2002]) and Matter of McLaughlin v Mathews (290 AD2d 846 [3d Dept 2002]).

. The court cites Matter of Armani (83 Misc 2d 252, 258 [Hamilton County Ct 1975]) for the view that “there is no absolute right, or for that matter, even a qualified right of assigned counsel to compensation equaling that which that attorney would receive were he or she to be retained privately.” (Brisman at 583.)

. 173 Misc 2d at 584.

. 173 Misc 2d at 588.

. See also, Matter of Dutchess County Dept. of Social Servs. [Anthony S.] (187 Misc 2d 348 [Faro. Ct, Dutchess County 2001]), and Matter of Joshua AA. (187 Misc 2d 216 [Fam Ct, Clinton County 2001]), both approving hourly rates of $75 in Family Court.

. This decision states on its face that it will never be published in the Official Reports, but is nonetheless available for on-line ¿research and reference purposes.

. Id. slip op at 6.

. Id. slip op at 6.

. Id. slip op at 6-7, referring to Justice Kahn’s decision in People v Johnson (NYLJ, Apr. 18, 2001, at 19, col 2 [Sup Ct, NY County]).